# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| In Re SULFURIC ACID ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MDL Docket No. 1536
Master File No. 03 C 4576

Judge David H. Coar

Magistrate Judge Jeffrey Cole

*FILED*

AUG X 5 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## RESPONSE OF THE NORANDA DEFENDANTS IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH ADDITIONAL DOCUMENT REQUESTS AND INTERROGATORIES

Plaintiffs' motion to compel must be denied. Plaintiffs have already required the Noranda Defendants to incur the enormous burden and expense of searching through over 350 boxes of documents and reviewing hundreds of thousands of pages of e-mails in response to sixty-six extremely broad and all encompassing document requests. (The result was the production of over 840,000 pages of documents). This Herculean effort by the Noranda Defendants came after lengthy and arduous negotiations with Plaintiffs' lead counsel and thoroughly documented agreements on the scope and breadth of discovery. Plaintiffs now seek to repudiate those negotiated agreements and have this Court impose on the Noranda Defendants discovery that would virtually duplicate this search for the purposes of locating a few marginally relevant documents in what is clearly a fishing expedition. Plaintiffs apparently hope that something would turn up in these documents that would bolster their extremely weak case. The Federal Rules of Civil Procedure do not permit such gambits and neither should this Court.

In addition, after asking several thousand interrogatories, Plaintiffs now seek to have this Court impose on the Noranda Defendants the burden of answering additional interrogatories plainly designed to require the defendants to survey its employees and review documents to provide answers already asked of every Noranda employee involved in selling acid as well as being equally available to Plaintiffs in the documents already produced. Furthermore, Plaintiffs move to compel answers to such interrogatories without affording the Noranda Defendants the

RECEIVED FOR DOCKETING
05 AUG -5 PM 4: 46

CLERK
U.S. DISTRICT COURT

opportunity to negotiate with the Plaintiffs regarding the scope and breadth of the questions in the required meet and confer.[1] This Court should reject Plaintiffs' discovery abuses as well as its flaunting of this Court's standing orders.

### I.    THIS COURT MUST REJECT PLAINTIFFS' MOTION TO COMPEL AN ADDITIONAL DOCUMENT PRODUCTION.

#### A.    Plaintiffs Should Be Required To Honor Their Agreement Regarding The Scope of Discovery.

Plaintiffs originally served sixty-six document requests and ten interrogatories on the Noranda Defendants. Instruction Number 1 of these document requests stated that, "[u]nless otherwise noted, the relevant time period of [the] document requests is January 1, 1988 through the date upon which the requests were served ...." Thus, despite the four-year statute of limitations mandated by Section 4 of the Clayton Act for private treble damage actions, the Plaintiffs sought to discover documents for an extraordinary fifteen-year period.[2]

In the Fall of 2003, counsel for the Noranda Defendants and Plaintiffs engaged in lengthy negotiations concerning the scope and breadth of Plaintiffs' document requests and interrogatories. Those negotiations led to various agreements that were memorialized in several long letters.[3] The negotiations regarding the relevant time period of the requests resulted in an agreement that the period would be essentially the same originally sought in Instruction Number 1 with the exception that the end date would be reduced to correspond with the outside date for the class. Mr. David Gustman, lead counsel for the Noranda Defendants, confirmed that agreement in a letter dated October 29, 2003 to Mary Jane Fait, one of Plaintiffs' co-lead counsel. In his letter, Mr. Gustman stated:

> **Instruction No. 1:** This instruction stated that the relevant time period of these document requests would be January 1, 1988, through the date upon which these requests for documents are served upon you (the "relevant time period"). These document requests seek all responsive documents created or generated during the relevant time

---

[1] Surprisingly, Plaintiffs and the Noranda Defendants have been cooperating with each other over discovery since the Fall of 2003 with virtually no disputes. It has only been at the very close of discovery that Plaintiffs' counsel have seen fit to file a "flurry" of discovery motions.

[2] Significantly, the heart of Plaintiffs' allegations were the decisions by companies manufacturing sulfuric acid by burning sulfur to shut down their own production and buy acid from Noranda that was produced as an involuntary waste by-product of the smelting of metals. These decisions were widely reported in the trade press at the time they occurred and thus were well-known to Plaintiffs' class well before the statute of limitations period.

[3] Copies of the initial exchange of letters can be found as Exhibit A to Appendix I filed with this brief.

period, as well as all responsive documents created or generated outside this period, but which contain information concerning this period.

We indicated that we will produce documents within the time period alleged in the complaint, January 1988 through January 16, 2003, which latter date is the outside date for the class as alleged in the Consolidated Amended Complaint. (Exhibit A, October 29, 2003 letter at 5).

Ms. Fait responded with a letter dated November 14, 2003 where she disputed some of the agreements that Mr. Gustman asserted in his letter had been reached with the Plaintiffs, clarified some, and agreed with others. As far as the relevant time period for the document search, Ms. Fait's letter plainly and simply stated:

Instruction #1: Your description of our discussion is accurate. (Exhibit A, November 14, 2003 letter at 3).[4]

### B. Abrogation Of The Agreed-To Relevant Time Period Would Cause An Enormous Burden And Expense.

Based on the foregoing agreement, a large team of lawyers for the Noranda Defendants reviewed over 350 boxes of Noranda documents, as well as hundreds of thousands of pages of email, that seemed relevant to sulfuric acid sales in the United States in the period of January 1, 1988 through January 16, 2003.

---

[4] Elsewhere in her letter, Ms. Fait does state that, although she understood the desire of the Noranda Defendants "to make only one pass-through of Noranda's documents," the Plaintiffs would "reserve [their] right to request additional documents once [they had] reviewed Noranda's initial production . . . ." This so-called "reservation of rights" was buried within a paragraph dealing with the production of documents from smelters and arguably deals only with that topic. More significantly, however, Mr. Gustman, in his letter of October 29, 2003, never agreed with that reservation of rights. He stated:

> Plaintiffs indicated that their agreement to limit certain requests should not prejudice their right to ask for more documents once the first production has been reviewed. We indicated that this is fine for the document request responses to which we have indicated we should hold off, but we do not agree with Plaintiffs' position regarding document requests for which we have agreed to undertake a search as outlined by these negotiations. We reiterated our position that we generally want to only make one pass through the Noranda Defendants' documents. However, we will entertain additional narrow, specific requests to search for documents after our initial search and production.

It is clear from this passage that the Noranda Defendants were not agreeing to additional document requests that would require an entire "pass" through the 350 boxes, but would entertain narrow requests for which the Noranda Defendants could readily locate documents responsive to such requests. Incredibly, when Plaintiffs quote the above paragraph written by Mr. Gustman in their recently filed Response to the Noranda Defendants' Motion to Strike Plaintiffs' Motion to Compel (filed July 12, 2005), Plaintiffs omitted the key second sentence where Mr. Gustman clearly indicates he does not agree to the right of Plaintiffs to ask for more documents after the first production.

The 350 boxes of documents reviewed by counsel came from storage maintained by Noranda in Toronto. These boxes were the manner in which the Noranda Defendants kept their sulfuric acid documents in the "usual course of business" after 1998.[5] There were virtually no documents kept in file cabinets in a sulfuric acid department, in the desk drawers of any Noranda executives, or in any accounting department responsible for sulfuric acid. The reason is quite simple. When Noranda entered into its joint venture with DuPont in 1998, all of the acid produced by Noranda and Falconbridge was to be sold by the joint venture. Therefore, Noranda no longer had a separate acid sales force. All files not transferred to the joint venture were packed up from offices and file drawers and transferred to storage.[6] The files in storage contained virtually all of the older documents being sought by the Plaintiffs here. Files in storage apparently were not kept in any organized sequence other than when they were received in storage. (*See* Declaration of Wanda Vazquez found as Exhibit B to Appendix I at ¶¶ 7 - 8).

Consequently, to search for the few pre-1988 documents being sought by the Plaintiffs would now require another complete search of all 350 boxes at an enormous burden and expense.[7] It could also take weeks to completely review all 350 boxes again.

This expense also might have been avoided if Plaintiffs themselves had moved more diligently. For example, the July 12, 1988 Prime that Plaintiffs claim "is one of the most important pieces of evidence produced by the Noranda Defendants in this case" (Pls.' Br. at 2), was produced to the Plaintiffs as early as February, 2004. (See Declaration of Wanda Vazquez ¶ 15). This was early on in the Noranda Defendants' review of the 350 boxes from storage. As Plaintiffs note, the 1987 Prime they now seek (as well as all earlier Primes) was prominently

---

[5] As established by the Declaration of Wanda Vazquez found as Exhibit B to Appendix I, relevant and responsive documents were produced in the order in which they were found in the 350 boxes from Noranda's storage, thereby complying with Federal Rule of Civil Procedure 34(c).

[6] Defendant NorFalco LLC was, of course, a going concern at the time of the document search. Consequently, documents produced from NorFalco were produced from a more traditional setting of office files.

[7] The Plaintiffs' Motion and Supporting Memorandum principally focuses on Document Request 4 of Plaintiffs' Interrogatories and Document Requests to Noranda and Falconbridge Defendants Set No. Two. Although paragraph 11 of their brief and memorandum briefly addresses Requests Nos. 1, 2, and 3, it does note that the Noranda Defendants had stated that they would produce documents in response to these requests. (In point of fact, the document response states that Noranda and Falconbridge had already produced voluminous documents in response to these requests, but would produce additional non-privileged documents.) Plaintiffs' motion was brought, however, without the "meet and confer" required by the Local Rules and Standing Orders of both this Court and Judge Coar. If the Plaintiffs had complied with these rules and standing orders, they would have learned that the Noranda Defendants in fact complied as promised. Such documents were produced on June 7, 2005 and have Bates numbers NFD 591997-593239.

mentioned in the 1988 Prime. (Pls.' Br. at 2-3). Rather than wait until the eve of the close of discovery, if the Plaintiffs had acted promptly in early 2004, the burden on the Noranda Defendants to search for these documents would have been far less than the enormous burden and expense that would be incurred now. Indeed, as set forth in the Declaration of Ms. Vazquez, the Noranda defense team had reviewed only 90 out of the 350 boxes through February, 2004. (See Declaration of Wanda Vazquez ¶¶ 12-14).

The same is true regarding the Essex agreement that Plaintiffs now seek. The existence of such an agreement was well-known in the marketplace at least as early as 1989. Thus, the January 27, 1989 issue of *Fertecon Sulphuric Acid Telefax*, a widely-distributed trade publication, stated:

> Noranda is believed to have concluded an agreement with DuPont which will involve closing of the latter's 195,000 t/yr. plant at Grasselli, NJ which will then receive Noranda material. This arrangement is similar to that negotiated by Noranda with Essex, and more recently with Delta. (Exhibit C).

Plaintiffs' counsel themselves should have been aware of this Fertecon fax as early as mid-December 2003 but not any later than mid-January 2004. A collection of excerpts from Fertecon faxes and newsletters was produced to Plaintiffs' counsel in mid-December 2003 as part of the files of Dr. Lauren Stiroh, the class expert economist retained by the Defendants. Dr. Stiroh was deposed by Plaintiffs' counsel on February 15, 2004 and this collection of Fertecon excerpts was actually made an exhibit by Plaintiffs' counsel at that time.[8] Had Plaintiffs' counsel been diligent, they would have made the request for the Essex agreement and surrounding documents in December, 2003 or January, 2004 when the Noranda Defendants had barely begun to review the 350 boxes. To request these documents now at the close of discovery smacks of harassment.

### C. The Burden And Expense Of Repeating The Document Search Far Outweighs Any Probative Value Of The Documents Plaintiffs Seek.

The burden and expense of repeating the original document search by reviewing the 350 boxes of documents originally searched would be enormous. It also could take weeks to completely review all 350 boxes even with a large team of lawyers and paralegals.[9] In contrast

---

[8] A copy of this deposition exhibit can be found as Exhibit D to Appendix I.

[9] In light of Plaintiffs' delay in asking for these documents, should this Court order this discovery to proceed, the Plaintiffs should pay for the additional costs of repeating the search. This concept has support in 8 Wright & Miller,

5

to the time and expense necessary to repeat the original search, the probative value of the documents sought by the Plaintiffs pursuant to Document Request 4 is minimal and may in fact be cumulative. Take for example the 1987 Prime. The Plaintiffs describe the 1988 Prime as setting forth in detail an alleged "scheme to approach voluntary producers of sulfuric acid and convince them to shut down their plants and purchase Noranda's smelter acid instead." (Pls.' Br. at 2-3). The Second and Third Amended Complaints[10] allege several such agreements. However, as alleged in those complaints, each one of these agreements is a "one-off" deal with a voluntary producer of sulfuric acid to supposedly convince them to shut down. There is no allegation of a single over-arching conspiracy. To the extent that such conduct violates the antitrust laws – which it does not[11] -- the evidence would be unique to each individual voluntary producer. The Plaintiffs have obtained tens of thousands of documents from the Noranda Defendants and the voluntary-producer defendants exploring each of these one-off deals, and have taken 38 depositions covering each of them. It is unlikely that the 1987 Prime would add much to the already voluminous record and would be, at best, cumulative.[12]

The Plaintiffs have also misstated and mischaracterized the testimony of witnesses regarding whether a revenue-sharing provision may have existed in a mid-1980 contract. For example, although Plaintiffs claim that Mr. Dullea was "unable to recall or explain how Noranda and Delta priced sulfuric acid to their direct rail or 'drop shipment' customers without being able to review the 1984 contract," (Pls.' Br. at 3-4), the fact is that Plaintiffs never provide a cite to Mr. Dullea's deposition supporting this point, and Mr. Dullea never so testified. Indeed, in regard to rail direct or drop shipment customers, he did testify how pricing was determined:

---

*Fed. Prac. & Proc.*, § 2008.1 ("One method for regulating discovery requests that infringe on the limits of Rule 26(b)(2) is to condition orders that such discovery go forward on the payment by the party seeking discovery ...." (2005 Pocket at 32)).

[10]  Judge Coar has not yet ruled on Plaintiffs' Motion to file the Third Amended Complaint.

[11]  Offering to sell waste by-product smelter acid with essentially a zero cost of production to a voluntary sulfur burner that has real input costs at a sales price less than the cost that the sulfur burner can make acid does not violate the antitrust laws. Indeed, such conduct is pro-competitive because it facilitates an increased output of acid in the marketplace. At any rate, displacement of burner acid by smelter acid would be inevitable. It would not be rational for a burner to keep operating with real input costs if the price of acid in the marketplace is below their cost of production.

[12]  Significantly, witness after witness has testified that the decision to shut down their voluntary production (with its real input costs) and sell instead lower cost waste by-product smelter acid from Noranda, was an independent decision. *See, e.g.*, Larson Dep. at 129:23-130:8 (PVS); Harmon Dep. at 40:3-24 (Delta); Anderson Dep. at 78:14-80:18, 85:12-21 (DuPont); and Cannon Dep. at 73:13-77:16 (Boliden). Copies of all deposition excerpts cited in this brief can be found in a separately bound Appendix II submitted in conjunction with this brief.

They were priced based on our assessment of what the competition was going to do. These – assuming that we started out with Boise Cascade and James River both of those accounts were accounts at which Marsulex was aggressive and so we had to anticipate their bid because they came up for annual or multi-year bids every – well periodically and so when we bid on that business we bid what we anticipated would be a price that was under Marsulex's bid and when we made that bid after we made it we made Noranda aware of what the price was so that we could negotiate a fair return for Delta.[13]

Plaintiffs' brief also states that, "under the mid-1980s 'drop shipment' contract, Noranda and Delta were required to agree upon the delivered price of the sulfuric acid to the end customers." (Pls.' Br. at 4). Again, Plaintiffs' assertion misstates Mr. Dullea's complete testimony. First, when Ms. Fineran was questioning Mr. Dullea about an agreement for a delivered price, she was referring to a 1992 memo not a mid-1980s contract. (Dullea Dep. at 149-54). Second, Mr. Dullea's complete testimony makes it clear that he was referring to attempts to get Noranda to lower their price to Delta so that Delta could make a better margin. Mr. Dullea testified as follows:

> Q:   [**Ms. Fineran**]  Did you say that under the terms of the drop shipment agreement you had to let Noranda know what the bid to Delta's customers would be?
>
> A:   No.  If that was what I said that was not what I meant.  Under the terms of the drop ship arrangement there was a profit sharing and if the price – and I don't remember the terms of that drop ship arrangement but if the price – delivered price dropped to a level … it was below a point where Delta would achieve any margin on the sale so in those situations we had to discuss with Noranda what we were bidding in order for them to support us with some profit margin for Delta.
>
> Q:   [**Ms. Fineran**]  What do you mean when you say support us, the word "support"?
>
> A:   In other words, they had to agree to a delivered price and some margin for Delta.

(Dullea Dep. at 153-54).

> Later on, Mr. Gustman asked Mr. Dullea on cross-examination to clarify:
>
> Q:   [**Mr. Gustman**]  [Ms. Fineran] was asking you about this time period at the end of 1992 and I think you said you were going to Noranda to get them to support you or words to that effect, do you recall that?
>
> A:   Yes.

---

[13] Dullea Dep. at 69:3-14.  Plaintiffs' Motion to Compel cites a rough draft of Dullea's deposition whose numbers do not match the official court reporter's final transcription.  The citations used herein are to the official court reporter's final transcription of the deposition.

Q:      Wasn't this all about going to Noranda and getting them to lower their price to you?

A:      Absolutely.

                        *  *  *

Q:      And that's what you meant by support?

A:      Yes.

(Dullea Dep. at 184:9-185:3).

**D.      This Court Should Not Order The Noranda Defendants To Undertake Plaintiffs' Work For Them.**

In addition to asking this Court to require the Noranda Defendants to incur the enormous cost to repeat its entire document search to find a couple of marginal, mostly irrelevant documents, the Plaintiffs ask to have the Noranda Defendants do their work for them. Plaintiffs seek to have the Noranda Defendants identify the Bates numbers of all "monthly and quarterly billing and reconciliation statements between Noranda and Falconbridge, on the one hand, and the defendants or other resellers of sulfuric acid" on the other hand. (Document Request 4B; *see* Pls.' Br. ¶12 at 6-7).

First, the Noranda Defendants have produced all such reconciliation statements to the extent they exist. Any such reconciliation statements would have been in the 350 boxes or the hundreds of thousands of pages of e-mail searched by the Noranda Defendants. Since Noranda and Falconbridge began selling all of the acid they produced through the Noranda DuPont joint venture, there has been no acid accounting office or other location that would have such documents.

Second, the burden to locate and identify these documents is equally great as to the Noranda Defendants as it is to the Plaintiffs. Plaintiffs purportedly have scanned all of the documents produced by the defendants into a computerized database that would allow them to easily search for such documents. Third, many of these documents could also be found in the files of the reseller-defendants with whom the Noranda Defendants had revenue-sharing provisions that called for such reconciliations. Plaintiffs have made no showing that they tried to locate such reconciliations through a request to these other defendants who may have them more readily accessible.

8

The Plaintiffs are simply wrong to assert that the Noranda Defendants did not produce documents "as they are kept in the usual course of business" and have mixed them randomly throughout the document production. As stated above, the documents were in fact produced as they were kept in the usual course of business – in storage. Documents appear to have been stored in boxes as they arrived at the document storage center. (*See* Declaration of Wanda Vazquez, Exhibit B, at ¶¶ 7-8). That there is no logical order to them is therefore not surprising. Because the documents were not always transmitted to storage with information as to their prior location, the Noranda Defendants do not have knowledge of which Bates numbers correspond with various employees' files contrary to the Plaintiffs' assertions. (Pls.' Br. ¶13 at 7). (See Declaration of Wanda Vazquez ¶ 7).

It is well-established that interrogatories should not be used to require an adversary to go to work for a party. For example, the District Court for the District of Columbia stated in *Aktiebologet Vargos v. Clark*, 8 F.R.D. 635, 636 (D. D.C. 1949):

> [I]nterrogatories are not to be used in an oppressive manner. An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks in searching for facts and classifying and compiling data. A litigant may not compel his adversary to go to work for him.

*Accord, Riss & Co. v. Association of American Railroads*, 23 F.R.D. 211, 212-13 (D. D.C. 1959) ("the court should not require an interrogated party to search its own records in order to compile and correlate information for the benefit of its adversary where the adversary has the right to inspect the records themselves").

## II. THIS COURT SHOULD DENY PLAINTIFFS' MOTION TO FORCE THE NORANDA DEFENDANTS TO ANSWER CERTAIN INTERROGATORIES FOUND IN PLAINTIFFS' THIRD SET OF INTERROGATORIES.[14]

This Court should deny Plaintiffs' Motion to Compel answers to certain interrogatories contained in their third set of interrogatories.[15] The discovery sought in interrogatories 1, 2 and 7

---

[14] As set forth in Noranda Defendants' Motion and Memorandum To Strike Plaintiffs' Motion To Compel, the Noranda Defendants filed their response and objections to the Plaintiffs' third set of interrogatories on June 30, 2005. Plaintiffs filed their motion to compel on July 1, 2005 without any effort to undertake the required "meet and confer" with counsel for the Noranda Defendants.

[15] Plaintiffs' Motion does not specify which interrogatory responses made by the Noranda Defendants they find deficient other than to assert that the Noranda Defendants' reference pursuant to Rule 33(d) to the document production is not a proper response. Pls.' Br. at 7-8. The only interrogatory responses that invoked Rule 33(d) were

is unreasonably cumulative and duplicative. Moreover, Plaintiffs had ample opportunity through over 14 depositions to obtain the information sought by these questions. The burden and expense of responding to this discovery far outweighs any additional information beyond that obtained already in depositions or in the millions of pieces of paper produced by all of the defendants in this case. As such, the discovery violates Rule 26(b)(2) of the Federal Rules of Civil Procedure and Plaintiffs' Motion to Compel should be denied.

A.    **Plaintiffs' Motion As To Interrogatory No. 1 Should Be Denied**.

The first interrogatory found in Plaintiffs' third set of interrogatories is a good illustration of the objectionable nature of Plaintiffs' discovery. Without defining their terms, Plaintiffs ask the Noranda Defendants to identify any "make versus buy," "make or buy" or "shut down economics" discussions relating to any Defendant.[16] This topic, however, was fully explored in virtually all of the depositions taken by Plaintiffs of both the employees of the Noranda Defendants involved in the sale of sulfuric acid and the employees of the reseller-defendants. The topic also is evidenced in many documents produced to the Plaintiffs by all of the defendants.

An example of the fact that the "make versus buy" topic was fully covered in depositions can be found in the deposition of Dean Larson, the President of PVS of Ohio during the relevant time period. (Larson Dep. at 8-9). Larson Deposition Exhibit 1 is a document produced by Defendant PVS dated August 30, 1987 and initialed by Frank Biermann, another PVS employee. It was sent to Mr. Larson in August, 1987. (Larson Dep. at 71-73). The exhibit is entitled "Copley Sulfuric Shutdown Action Plan" and contains the following statement dealing with the "make versus buy" concept:

---

responses to interrogatories 1, 2 and 7. Consequently, the Noranda Defendants will address their response here to those interrogatories. If the Plaintiffs intend that their Motion to Compel cover the other interrogatories, the Noranda Defendants would reserve the right to respond to Plaintiffs' position as to those other interrogatories at such time as Plaintiffs' articulate their concerns. A copy of Plaintiffs' Interrogatories Set No. Three is Exhibit E to Appendix I. A copy of the Responses and Objections of Noranda and Falconbridge to Plaintiffs' Interrogatories Set No. Three is Exhibit F to Appendix I.

[16] As set forth in the Noranda Defendants' Motion and Memorandum To Strike Plaintiffs' Motion To Compel, Plaintiffs failed to engage in the "meet and confer" required by Local Rule 37.2 and the standing orders of Judge Coar and this Court. If Plaintiffs had undertaken to have the required meet and confer, the ambiguous terms used in the interrogatories might have been further defined.

> Sulfuric is generating a modest margin, but not covering indirect
> cost. Make vs. buy analysis favors purchase of smelter acid.[17]

The document goes on to identify four possible candidates from which PVS could buy smelter acid, only one of which was Noranda. Mr. Larson was fully questioned on this memo as well as the "make versus buy" concept in general. Larson Dep. at 71:19-89:18, 92:16-112:6, 276:17-278:15.

Many such "make versus buy" documents have been produced by defendants in this case and raised in numerous depositions. *See, e.g.*, Bouma Dep. Exhibit 5; Cowell Dep. Exhibit 10; Gagnon Dep. Exhibit 20; Holden Dep. Exhibits 1-2; Jones Dep. Exhibits 20-23, 28, 31; McLean Dep. Exhibit 6; Siverns Dep. Exhibits 1, 35; Skurnac Dep. Exhibits 2-3, 9; Larson Dep. Exhibits 1-5, 8; Cannon Dep. Exhibits 1, 5, 6, 10-11; Dullea Dep. Exhibit 3; Harmon Dep. Exhibits 1-3, 20; Mask Dep. Exhibits 17-18; Burke Dep. Exhibit 22.[18]

Given the breadth of Plaintiffs' interrogatory, in order to respond the Noranda Defendants would have to make inquiries of every employee involved with sulfuric acid sales that might have had discussions either internally or with any PVS employee regarding PVS' decision to cease making its own acid by burning sulfur and instead buy waste by-product smelter acid from Noranda. The Noranda Defendants would also have to search the millions of pages of documents produced in the case for additional references to "make versus buy" discussions. Significantly, however, the Plaintiffs have already deposed every current or former employee of Noranda involved in sulfuric acid sales and asked about such discussions. *See, e.g.*, Bouma Dep. at 60:12-65:23; Cowell Dep. at 60:20-63:17; Desanti Dep. at 148:20-150:11, 154:23-19, 163:7-19, 218:3-219:15; Gagnon Dep. at 126:19-127:13, 230:20-231:19, 241:23-244:2; Goldman Dep. at 56:7-15, 117:8-118:22; Holden Dep. at 119:8-125:2; Jones Dep. at 194:13-199:20, 218:7-220:7, 290:10-295:7; McLean Dep. at 48:16-55:2; Ross Dep. at 121: 3-16, 364:15-365:13, 605:15-24; Shaw Dep. at 294:9-295:11; Siverns Dep. at 329:12-330:7, 337:5-345:16; Skurnac Dep. at 34:10-55:4, 68:18-90:7, 212:23-213:8, 291:21-293:15; Thomas Dep. at 235:21-239:16, 262:18-264:22; Zier-Vogel Dep. at 127:12-130:21, 150:18-151:23.

Moreover, the burden on the Noranda Defendants to search for and assemble documents dealing with the "make versus buy" topic is the same as it is for Plaintiffs.

---

[17] A copy of Larson Dep. Exhibit 1 can be found as Exhibit G to Appendix I.

[18] Copies of these exhibits can be found as Exhibit H to Appendix I.

Requiring the Noranda Defendants to question the very same employees already deposed on the same topic and to review the many documents already produced in order to fashion responses into an interrogatory answer would be unreasonably cumulative and duplicative. It is logical to assume that the employees deposed would provide the same answers in response to an interrogatory that they did in their depositions. Plaintiffs have made no showing that there is any information to be gained by requiring the Noranda Defendants to engage in such an exercise as opposed to Plaintiffs' reliance on the depositions already taken and documents already produced.

**B.    Plaintiffs' Motion As To Interrogatory No. 2 Is Equally Cumulative and Duplicative.**

Interrogatory number 2 asks the Noranda Defendants to identify any instances of the sharing or exchange of customer information (other than technical requirements regarding acid specifications) with any other defendant. Again, this topic was covered at the depositions taken by the Plaintiffs of Noranda's current and former employees. *See, e.g.,* Bouma Dep. at 111:3-112:6, 146:2-14, 146:23-147:11, 200:3-19, 216:23-217:12; Cowell Dep. at 315:13-317:22; Gagnon Dep. at 53:11-55:3, 56:9-58:4, 81:4-82:11, 153:3-16; Holden Dep. at 47:20-48:20, 52:10-53:9, 96:3-20, 181:20-182:13, 185:15-187:24, 237:6-20; Jones Dep. at 205:12-212:3; Ross Dep. at 156:17-157:4, 293:1-295:6, 487:17-488:23, 492:10-12, 540:16-543:2, 593:5-16; Siverns Dep. at 46:12-48:5, 71:1-72:11, 161:20-162:1, 187:2-189:22, 286:1-287:7, 287:11-288:21; Skurnac Dep. at 112:23-114:23, 146:13-24, 212:6-21, 217:5-218:7; Zier Vogel Dep. at 51:14-53:14, 71:2-18, 101:4-7, 112:8-18, 130:18-131:10; Harmon Dep. at 104:10-24; Cannon Dep. at 39:15-41:2, 88:14-90:3.

The topic is also evident in many documents produced by the defendants.

**C.    Plaintiffs' Motion As To Interrogatory No. 7 Must Similarly Be Denied.**

Like interrogatories numbers 1 and 2, interrogatory number 7 would not gain Plaintiffs sufficiently new or different information not already uncovered in the depositions or available in the documents so as to justify the burden and expense on the Noranda Defendants. Interrogatory number 7 asks the Noranda Defendants to identify any instances of joint, shared or concurrent communications or meetings involving employees of the Noranda Defendants, any of the reseller defendants and any of their customers. As with the other interrogatories, the only way for the Noranda Defendants to answer such an interrogatory would be to ask its employees involved

12

with sulfuric acid sales to identify such communications. However, the Plaintiffs have already deposed every current or former employee of the Noranda Defendants involved with sulfuric acid sales during the relevant time period and asked them about joint, shared or concurrent communications with resellers and their customers. *See, e.g.*, Cowell Dep. at 64:21-67:13; Holden Dep. at 48:21-56:21, 59:22-61:20, 260:5-19, 268:7-12; McLean Dep. at 65:5-14; Ross Dep. at 488:24-493:13, 617:10-14; Siverns Dep. at 95:24-96:9; Skurnac Dep. at 137:24-139:6; Cannon Dep. at 90:4-91:10, 310:11-311:4. The topic is also mentioned in documents produced to the Plaintiffs and the burden on the Noranda Defendants to uncover such documents is the same as the burden on the Plaintiffs to do so.

### D. Rule 26 Authorizes A Court To Deny Discovery In Situations As Such Here.

Rule 26 of the Federal Rules of Civil Procedure was amended in 1983 by adding new provisions now found in Rule 26(b)(2) directing a court to limit discovery that might otherwise be available under the rules if the court found any of the indicia of abuse enumerated in this subpart of the rules. These indicia of abuse include (i) whether the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit. Here, all three indicia of abuse are present. As set forth above, in order to answer these interrogatories, the Noranda Defendants would be forced to make inquiries of the same current or former employees that were deposed by the Plaintiffs on the same topics. Such discovery is clearly cumulative and duplicative. Certainly, the Plaintiffs had ample opportunity to explore these topics by deposition, or to review the documents already produced, to obtain the information sought. Any additional information that might possibly be gleaned from such an effort by the Noranda Defendants would not justify the burden and expense on the Noranda Defendants. These interrogatories fit squarely with the criteria of abuse that Rule 26(b)(2) was designed to eliminate.

This Court has an obligation to limit discovery when any of the indicia of abuse found in Rule 26(b)(2) are present. Indeed, Arthur Miller, the reporter for the Advisory Committee for the amendments to Rule 26, has stated in regard to the indicia of abuse found in Rule 26(b)(2):

> Judges now have the obligation to limit discovery if certain things
> become manifest. The things that are then listed [in paragraph
> (b)(2)] are basically the evils of redundancy and disproportionality.

8 Wright, Miller & Marius, *Fed. Prac. & Pro.* § 2008.1 fn 3, quoting Miller, "The August 1983
Amendments to the Federal Rules of Civil Procedure" at 32-22 (1984).

Even before the amendment to Rule 26(b) adding these specific indicia of abuse, however
courts have held that interrogatories served after depositions that covered the same topics was an
abuse of discovery. For example, in *Schotthofer v. Hagstrom Construction Co.*, 23 F.R.D. 666,
667-68 (S.D. Ill. 1958), the court stated:

> When ... a party has submitted to the taking of his deposition at the
> request of his opponent and thereafter he is served with written
> interrogatories by the same opponent, to the extent the
> interrogatories make inquiry into the same particulars covered in
> the prior deposition the use of interrogatories is an abuse of the
> discovery procedure and is oppressive ....

*Accord, Breeland v. Yale and Towne Manufacturing Co.*, 26 F.R.D. 119, 120 (E.D. N.Y. 1960)
(quoting *Schotthofer*); *Spector Freight Systems, Inc. v. The Home Indemnity Co.*, 58 F.R.D. 162,
164-65 (N.D. Ill. 1973) ("Since all information necessary to answer the disputed interrogatories
is equally available to the [proponent] via depositions, records and audit, there is no compelling
reason to answer the defendants' interrogatories."); *Richlin v. Sigma Design West Ltd.*, 88 F.R.D.
634, 638 (E.D. Calif. 1980) (denied motion to compel interrogatories where plaintiffs had
already been deposed and information sought could be gleaned from the depositions); *Sendi v.
Prudential-Bache Securities*, 100 F.R.D. 21, 23 (P.D.C. 1983) ("[w]here complete answers are
contained in prior depositions, then a motion to compel answers to subsequent interrogatories
seeking to elicit the same information should be denied as burdensome, vexatious, oppressive
and totally without justification."); *Pulsecard, Inc. v. Discovery Card Services, Inc.*, 168 F.R.D.
295, 305-06 (D. Kan. 1996) (quoting *Sendi*).

### Conclusion

For the foregoing reasons, Plaintiffs' motion to compel further document production and
interrogatory answers should be denied.

Dated: August 5, 2005

Respectfully Submitted,

By: _____
One Of The Attorneys On Behalf Of
The Noranda Defendants

David C. Gustman
Jeffery M. Cross
John Z. Lee
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
(312) 360-6000

*Attorneys for Defendants Noranda Inc.,*
*Falconbridge Limited, and*
*NorFalco LLC*

907782-01249-0039

15

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for the Noranda Defendants, hereby certifies that he caused copies of the foregoing **Response of the Noranda Defendants to Plaintiffs' Motion to Compel Compliance with Additional Document Requests and Interrogatories** to be served via facsimile, hand delivery and/or federal express (as denoted) on this 5th day of August, 2005 on the following:

Steven O. Sidener*
Karen D. Fineran
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: 415/777-2230
Facsimile: 415/777-5189
*Co-Lead Plaintiffs' Counsel*

Mary Jane Edelstein Fait**
Wolf Haldenstein Adler Freeman & Herz, LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Telephone: 312/984-0000
Facsimile: 312/984-0001
*Co-Lead Plaintiffs' Counsel*

Steven A. Asher*
Weinstein Kitchenoff & Asher LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: 215/545-7200
Facsimile: 215/545-6535
*Co-Lead Plaintiffs' Counsel*

Joseph C. Kohn*
William E. Hoese
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: 215/238-1700
Facsimile: 215/238-1968
*Co-Lead Plaintiffs' Counsel*

Eric W. Sitarchuk*
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215/665-8500
Facsimile: 215/864-8999
*Counsel for E.I. Du Pont De Nemours and Company*

James P. Denvir*
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
Telephone: 202/237-2727
Facsimile: 202/237-6131
*Counsel for E.I. Du Pont De Nemours And Company*

R. Mark McCareins**
Todd Jay Ehlman
Edward L. Foote
Winston & Strawn
35 West Wacker Drive
Chicago, IL 60601
Telephone: 312/558-5600
Facsimile: 312/558-5700
*Counsel for Marsulex Inc. and Chemtrade Logistics*

Michael P. Connelly**
William E. Snyder
Cory D. Anderson
Connelly Roberts & McGiveney LLC
One North Franklin Street, Suite 1200
Chicago, IL 60606
Telephone: 312/251-9600
Facsimile: 312/251-9601
*Counsel for Intertrade Holdings, Inc.*

\*       Denotes service via facsimile and federal express
\*\*     Denotes service via facsimile and hand delivery

Joel G. Chefitz**
Todd L. McLawhorn
Howrey Simon Arnold & White, LLP
321 North Clark Street, Suite 3400
Chicago, IL 60610
Telephone: 312/595-1239
Facsimile: 312/595-2250
*Counsel for Koch Industries, Inc.*

Dylan Smith*
James T. Kilbreth
Verill & Dana, LLP
One Portland Square
P.O. 586
Portland, ME 04112-0586
Telephone: 207/774-4000
Facsimile: 207-774-7499
*Counsel for GAC Chemical Corporation*

Edward H. Pappas*
Dickinson Wright PLLC
38525 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304-2970
Telephone: 248/433-7200
Facsimile: 248/433-7274
*Counsel for Pressure Vessel Services, Inc.*

Michael H. Cramer**
Michael D. Richman
Adam R. Chiss
Sachnoff & Weaver, Ltd.
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Telephone: 312/207-1000
Facsimile: 312/207-6400
*Counsel for Pressure Vessel Services, Inc.*

616872

---

\*      Denotes service via facsimile and federal express
\*\*     Denotes service via facsimile and hand delivery