IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In Re SULFURIC ACID ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) | MDL Docket No. 1536<br>Case No. 03 C 4576<br><br>Judge David Coar<br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This is a multi-district, antitrust case involving allegations that the defendants conspired to raise, fix, maintain or stabilize the price of sulfuric acid in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs filed a consolidated amended class action complaint on September 5, 2003, and then added Koch and Marsulex as defendants when they filed their second amended consolidated complaint on May 24, 2004. On July 1, 2005, the day discovery closed, plaintiffs moved to compel Koch to answer outstanding interrogatories and to compel Marsulex to produce Sharon Dubeau and Doug Cadwell for depositions.[1]

Plaintiffs have moved to compel defendants, Koch Industries, Inc. ("Koch") and Marsulex, Inc. ("Marsulex"), to comply with certain outstanding discovery requests. The defendants contend that they have complied or that the requests are otherwise improper. For the reasons that follow, the motion is

---

[1] Plaintiffs also sought to compel Koch to produce Gregory Schmidt for deposition. There was some difficulty locating Mr. Schmidt, and, as a result, his deposition could not be scheduled until after the July 1st discovery cut-off date. The parties have agreed to take the deposition at a mutually convenient time thereafter.

granted in part and denied in part.[2]

## ANALYSIS

### I
### Koch's Responses to Plaintiffs' Interrogatories

Koch submitted its answers and objections to plaintiffs' first set of interrogatories in late November 2004. Plaintiffs were troubled by several of the responses, including some where Koch referred plaintiffs generally to the documents it would be producing. (*Plaintiffs' Exhibit K*). Following consultation among the parties, it was agreed by mid-December 2004 that Koch would supplement certain responses that plaintiffs felt were inadequate. (*Plaintiffs' Exhibit L*). On June 24, 2005, Koch served its supplemental response to the first set of interrogatories. (*Plaintiffs' Exhibit M*). On July 1, 2005, plaintiff filed the instant motion to compel, complaining that:

> 1) In its supplemental response to interrogatory # 9(b), "Koch has failed to provide any information as to why various of its plants reduced production at various times as indicated in its response to Interior # 9(a)."
>
> 2) Koch has improperly invoked Rule 33(d) of the Federal Rules of Civil Procedure to answer many of plaintiffs' interrogatories, without identifying which documents Koch contends contain the answer to plaintiffs' interrogatories.

(*Plaintiffs' Motion and Supporting Memorandum to Compel*, at 8).

---

[2] Plaintiffs' motion originally was also addressed to Pressure Vessel, Inc. ("PVS") and Noranda Inc., Falconbridge Limited, and Norfalco LLC (the "Noranda defendants"). Plaintiffs and PVS have since indicated that they anticipate being able to work out their discovery compliance issues. The Noranda defendants have responded to the plaintiffs' motion but have also filed a motion to strike it, which engendered an additional round of briefing. Consequently, this order is confined to Koch and Marsulex.

# A
## Interrogatory 9

In reviewing a claim that an answer to an interrogatory is not responsive or is incomplete, the initial focus is on the question, not the answer, for on the question you ask depends the answer you get. "Putting the wrong question is not likely to beget right answers even in law." *Vanston Bond Holders Prot. Comm. v. Green*, 329 U.S. 156, 170 (1946)(Frankfurter, J., concurring). Plaintiffs have not pointed to any interrogatory that requested an explanation of the reasons why Koch reduced production of sulfuric acid in its plants at various times. Interrogatory 9(b) surely did not. It asked for "the annual volume of each different grade, strength or type of sulfuric acid produced or stored for each year of the relevant time period." (*Plaintiffs' Exhibit K*). In its supplemental response, Koch listed the total "throughput" for each of its facilities during the putative class period in eleven tables. This would seem a suitable response since the interrogatory does not request any explanation for the reduction in volume at the various plants. Similarly, Interrogatory 9(a) does not address reductions in volume or the reasons therefor, but simply seeks the various grades of sulfuric acid Koch produced. [3]

The motion to compel does not mention interrogatories 9(c) or 9(d), even though they seem slightly more to the point, as they request:

> c) The date(s) you ceased producing or reduced production of sulfuric acid or any specific grade, strength or type of sulfuric acid; and

> d) If your answer to sub-part c) of this interrogatory indicates that you reduced or ceased manufacturing sulfuric acid at any of your facilities, please state all reasons that you *ceased* production of sulfuric acid or any grade, strength or type of sulfuric acid.

---

[3] Neither the plaintiffs' moving papers nor the Koch's response contains anything captioned "Interior 9(a)." Consequently, I assume that Interior 9(a) is a typographical error and refers to Interrogatory 9(a).

(*Plaintiffs' Exhibit M*, at 3)(Emphasis supplied).

Neither interrogatory 9(c) nor 9(d) required any explanation of the reasons for the *reduction* in sulfuric acid production; each merely asked for an explanation of the reasons for the *cessation* of sulfuric acid production. (*Plaintiffs' Exhibit K*, at 11; *Plaintiffs' Exhibit M*, at 3) (Emphasis supplied). In response to interrogatory 9(c), Koch listed the dates it operated – and ceased to operate – each facility. (*Id.*, at 12). The dates when production was reduced may be garnered from the tables Koch submitted in response to interrogatory 9(b). In response to interrogatory 9(d), Koch explained the reasons for the cessation of production at each of its former plants. (*Id.*, at 12-14). Nor does the correspondence of plaintiffs' counsel ask for an explanation for any *reductions* in production: "I told you that we need to know *which plants* closed or decreased production as opposed to simply being sold." (*Plaintiffs' Reply in Support of their Motion to Compel*, at 6)(Emphasis supplied).

The letter's author may have had in mind the question of why Koch decreased production at certain of its facilities, but if so, it was not properly communicated in the letter, any more than it was in the interrogatories. Lawyers are not endowed with the gift of prophecy or clairvoyance. *Ballard v. Cit. Cas. Co.*, 196 F.2d 96, 102 (7th Cir. 1952). They cannot crawl into their adversary's minds. *Cf.* Posner, Overcoming Law, 276 (1995). For better or worse, the American system is an adversarial one, and while lawyers are constrained quite appropriately by a strict set of ethical rules, they have no obligation to assist an opponent in establishing claims. F.E.L. Publications v. Catholic Bishop of Chicago, 1989 WL 100006 *3 (N.D.Ill. Aug. 22, 1989); Korman v. Shull, 184 F.Supp. 928, 936 (W.D.Mich. 1960). Consequently, the defendants were only obligated to answer the questions that were asked, and were not required to guess that information beyond that which was specified was being sought.

In the instant case, the answers to the questions were not shrewdly calculated to evade; they were direct responses to direct questions. The law requires nothing more.

## B
## Interrogatories 2, 3, 7, 9, 10 and 11

Plaintiffs raise another issue with regard to Koch's interrogatory responses. They complain that Koch answered interrogatories 2, 3, 7, 9, 10 and 11, in whole or in part, by referring plaintiffs to various unspecified documents Koch had previously produced. For example, interrogatory 2 asks:

> For each division, department or other operating unit of your company engaged in the production, marketing, distribution or sale of sulfuric acid during the relevant time period, set forth its address, main telephone number, the name of each person who was in charge during the relevant time period, the general nature of the activities which it conducted, and its dates of operation.

Koch responded by providing the names of the individuals who held the title of president at its sulfuric acid divisions and the dates they held that office. As for the remainder of the information requested, Koch referred plaintiffs to the documents it would be producing. Those documents were produced by the hundreds of boxfuls, which were neither labeled nor organized to correspond to plaintiffs' production requests. (*Plaintiffs' Reply* at 5).

Koch initially responded to plaintiffs' interrogatories on November 23, 2004. Thereafter, plaintiffs expressed their dissatisfaction with some of those responses, the parties conferred, and Koch agreed it would supplement certain responses that plaintiffs felt were inadequate. This was memorialized in a letter from plaintiffs' counsel dated December 17, 2004. (*Plaintiffs' Exhibit L*). Six months later, on June 24, 2005, Koch provided plaintiffs with its supplemental responses.

Of the interrogatories that plaintiffs have made the subject of their motion, the December 17th letter

indicates that plaintiffs sought supplemental response for only interrogatories 9 and 11. Plaintiffs' letter did

not mention Koch's responses to interrogatories 2 or 10, specifically stated that plaintiffs had no objection

to Koch's response to interrogatory 3, and did not express any objection to Koch's response to

interrogatory 7. (*Plaintiffs' Exhibit L*).[4] Thus, Koch cannot now be held accountable, after the close of

discovery, for failing to supplement its responses to interrogatories 2, 3, 7, or 10. Motions to compel must

be timely. This aspect of the motion was not.

While the plaintiffs' motion to compel, filed on the day discovery was to close, is not necessarily

untimely in all respects, *see Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001)(court

has discretion to determine whether plaintiffs' tardiness constitutes undue delay), it is far too late for

plaintiffs to complain of responses that should have been addressed in its December 17th letter. If plaintiffs

were dissatisfied with Koch's responses to interrogatories 2, 3, 7, and 10, they should have indicated as

much when they lodged their complaints regarding the other responses, or at least before Koch provided

its supplemental responses on June 24, 2005. That portion of plaintiffs' motion addressing Koch's

responses to interrogatories 2, 3, 7, and 10, then, is denied.

Conversely, as plaintiffs had expressed their displeasure with Koch's responses to interrogatories

9 (discussed above) and 11 in December of 2004, and Koch did not serve its supplemental responses until

about a week before the close of discovery, plaintiffs' motion is timely with regard to those answers. In

---

[4] Interrogatory 3 requested the names of Koch's "current and former officers, directors, employees, or agents who had any policy-making or supervisory responsibilities or duties with respect to the production, marketing, distribution, sale or pricing of sulfuric acid." While Koch did refer plaintiffs to the documents it would be producing in response, it also listed those individuals, along with the dates of their tenures. This was a sufficient response. In addition, Koch indicated it would locate Greg Schmidt so that plaintiffs could depose him.

interrogatory 11, plaintiffs asked Koch to:

> state whether you had communications, meetings or negotiations with any other producer, supplier or distributor of sulfuric acid relating in any manner to the reduction or cessation of the production of sulfuric acid generally, or any specific grade, strength or type of sulfuric acid. If so, please state:
>
> > a) The identities of each supplier, producer or distributor;
> >
> > b) The identities of all participants in each such communication, meeting negotiation
> >
> > c) The dates and locations of each such communication, meeting or negotiation;
> >
> > d) Who initiated each such communication, meeting or negotiation;
> >
> > e) Whether any agreement or contract was entered into as a result of any such communication, meeting or negotiation; and
> >
> > f) The terms and effective dates of any contract entered into as a result of any such communication, meeting or negotiation.

In response, Koch referred plaintiffs to the documents that it would be producing in response to plaintiffs' document requests and to documents that it would be producing in lieu of answers to interrogatories 12, 14 and 15. Koch claimed that "the burden of deriving or ascertaining the answer to Interrogatory No. 11 is substantially the same for Plaintiffs as for [Koch]." This answer did not discharge Koch's obligations under Fed.R.Civ.P. 33(d):

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served . . .*and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served*, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived . . . *A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.* (Emphasis supplied).

Invocation of the Rule requires first that the information actually be obtainable from the documents.

In addition, the burden of deriving or ascertaining the answer must be substantially equivalent and there must be a sufficiently detailed specification of the records to permit the interrogating party to find the document as readily as can the party served. These are not optional requirements. *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2005 WL 1300778, *2 (N.D.Ill. April 28, 2005). As such, referring to business records *en masse*, without specifying particular documents is "an abuse of the option." *Bonds v. District of Columbia*, 93 F.3d 801, 811 (D.C.Cir. 1996)(*citing* Fed.R.Civ.P. 33(c) Advisory Committee's Note (1980 amendment)). The Rule was intended to make clear that the party responding "has a duty to specify, by category and location, the records from which the answers to the interrogatories can be derived." Fed.R.Civ.P. 33(c) Advisory Committee's Note (1980 amendment), *cited in In re G-I Holdings Inc.*, 218 F.R.D. 428, 438 (D.N.J. 2003). Koch has done nothing of the kind. [5]

Instead, it has produced a massive amount of documents and has left the plaintiffs to sift through them to find the answers to Interrogatory 11. It is anything but clear that the existence of "communications, meetings or negotiations" with other sulfuric acid producers, suppliers or distributors would be ascertainable simply from reviewing cold records. And even if a partial answer could be obtained from such a review, the plaintiffs are entitled to complete disclosure, which cannot be obtained by pouring through a mountain of material. Similarly, it cannot be said with any measure of confidence whether the documents would reveal whether agreements were entered into "as the result of any" of the defined involvements between Koch and third parties. Finally, there is nothing to support a conclusion that there

---

[5] There is no affidavit or certification or even an explanation by counsel that would provide an adequate basis from which it could be determined that there was a substantial equivalency of burdens or that it was impossible to do more than specify boxes of documents as being possible repositories of the information necessary to answer the interrogatory.

is an equivalency of burdens or that the specification was in sufficient detail to permit the location and identification with the same degree of effort and efficiency that Koch could bring to the task. *See Morin v. Nationwide Federal Credit Union*, No. 3:03CV277(CFD)(TPS), 2005 WL 1894611, *2 (D.Conn. Aug. 10, 2005)(reference to documents that were voluminous in number, were not Bates-labeled, that contained a range of categories of correspondence, records, notes, documentation on numerous topics, and in many instances were not readily identifiable, was inadequate response under Rule 33(d)); *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 323 (C.D.Cal. 2004)(reference to twenty-eight boxes of documents, without specifying particular documents, not a sufficient specification under Rule 33(d)); *In re G-I Holdings Inc.*, 218 F.R.D. at 438 (sweeping reference to 60 boxes of documents failed to provide guidance and neglected duty to specify documents by category and location).

In short, as applied to this particular motion, Rule 33(d) requires substantially more than making available a documents repository. [6] Koch has not shown that the burden of deriving or ascertaining the answer to the question of whether there were any meetings or communications with sulfuric acid producers or suppliers relating to the reduction or cessation of sulfuric acid is "substantially the same" for the plaintiffs as it is for Koch or that a complete answer to that question will be found in the documents. Thus, the motion to compel is granted as to interrogatory 11.

If Koch chooses to continue to invoke Rule 33(d), it must provide a specification "in sufficient detail to permit [the plaintiffs] to locate and to identify the records from which the answer may be ascertained,"

---

[6] A different result could well obtain under different circumstances.

and the specification must be sufficiently detailed so that the plaintiffs can "as readily as can [Koch]" locate

and identify the records. To the extent that there were any meetings and communications, the existence,

*content and course of which were not disclosed in the documents* – and it seems unlikely that there

were not such events – Koch must disclose with reasonable specificity, that a meeting or communications

occurred, what was said, by whom, who was present, and where or how the meeting or communication

occurred. If Koch's position is that there is no information in their possession regarding the existence and

content of meetings and communications as set forth in interrogatory 11, beyond what is reflected in the

documents, it must say so unambiguously in answer to interrogatory 11.

## II
## Depositions of Marsulex's Employees

On June 14, 2005, slightly more than two weeks before the close of discovery, plaintiffs served

deposition notices on Marsulex – as well as the other defendants – requesting the depositions of Doug

Cadwell and Sharon Dubeau. *(Plaintiffs' Exhibit O)*. According to Marsulex, plaintiffs had known about

these witnesses since November of 2004, as a result of earlier discovery. The dates requested for Ms.

Dubeau and Mr. Cadwell were June 28th and June 29th, respectively – about ten business days' notice for

both – and the locale was the Chicago office of plaintiffs' counsel. Both witnesses are Canadian citizens

residing in Toronto, Ontario. Marsulex's counsel responded to plaintiffs' notice by fax on June 16th,

expressing concern about the timeliness of the notices and indicating that scheduling issues precluded taking

the depositions on the requested dates. In closing, he invited further input from plaintiffs' counsel as to

scheduling the depositions. *(Marsulex's Exhibit B)*.

According to the affidavit of Marsulex's counsel, plaintiffs' counsel did not respond until June 30th,

10

the day before the July 1st discovery deadline. In that conversation, he inquired as to alternative dates for

the depositions and "asked [Mr. Ehlman, Marsulex's counsel] to get back to him by Tuesday, July 5, and

[Mr. Ehlman] agreed to do so." (*Defendants' Brief, Exhibit C, Declaration of Todd Ehlman*). The

next communication between the parties was apparently this motion, filed on July 1, 2005 – four days

before Marsulex's promised response and without complying with Local Rule 37.2.[7]

Rule 30(b)(1), Federal Rules of Civil Procedure, requires the provision of "reasonable notice" of

depositions. "Obviously no fixed rule can be laid down because much will depend on the other

circumstances of the particular case." 8A C.Wright & A.Miller, Federal Practice & Procedure: Civil §

2111 (1994). An obvious fact to be considered is the time between the notice and the deposition, with an

eye toward preparation and travel. *See, e.g., U.S. v. Philip Morris Inc.*, 312 F.Supp.2d 27, 36-37

(D.D.C. 2004)(notice of three business days, "especially to busy litigators who need to prepare to testify

about events occurring six to nine years previously," does not constitute "reasonable notice."); *Harry A.*

*v. Duncan*, 223 F.R.D. 536, 538-39 (D.Mont. 2004)("It is difficult to conceive how a party can

adequately prepare for 85 depositions within two weeks."); *Vardon Golf Co., Inc. v. Supreme Golf*

*Sales, Inc.*, No. 89 C 2654, 1989 WL 153335, *1-2 (N.D.Ill. Nov. 2, 1989)(four days notice of

deposition at distant locale unreasonable).

Thus, ten business days' notice would seem reasonable. But, just as negligence in the air does not

exist, neither does reasonableness: the analysis is necessarily case-specific and fact-intensive. What would

be reasonable even in a late stage of a relatively simple case with few lawyers may take on a very different

---

[7] Given the importance of the issues and the fact that they are fully briefed, I have discretion to consider the motion and the responses on the merits.

cast where, as here, the case is exceedingly complex, the depositions are to occur virtually hours before the discovery cut-off, and it was obvious—or at least probable—that the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices. The plaintiffs were keenly aware of all of these facts and of the competing demands imposed by the other discovery disputes that had been percolating for some period.

It was not as though there had been some impropriety, and the identities of the witnesses had been concealed by the defendants until late in the game. Obviously, in that case the defendants would have no basis to complain. *Compare R.H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934)("'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned. . . .'"). So far as the present record reveals, the plaintiffs waited months before taking any action and even then languished in inaction after Marsulex's prompt response to their deposition notices. Thus, in the context of this case, the notices were not reasonable or timely.

Judge Coar's Supplemental Standing Order on Pretrial Procedures in Civil Cases states that, "[a]ll discovery requests/notices should be initiated in time for responses to be completed . . . by the discovery cut-off date." Obviously, if the notices of deposition to the Marsulex employees were unreasonable, it necessarily follows that Judge Coar's Supplemental Standing Order would be violated, for the discovery would not then have been initiated in time to be completed by the July 1st cut-off date.[8]

In conclusion, as they applied the Marsulex employees, plaintiffs did not pay sufficient heed to the

---

[8] The original discovery deadline was September 10, 2004. Plaintiffs sought, and received, an extensions of that date to April 29, 2005. In March 2005, they obtained an additional extension to July 1, 2005. In setting this final date, Judge Coar made clear that no further arguments for extensions would be entertained.

various discovery cut-offs. There is little in the way of persuasive explanation from the plaintiffs.[9] As such, and especially because the conditions giving rise to their predicament are attributable to having waited to the last minute to notice the depositions, the motion to compel the depositions of Mr. Cadwell and Ms. Dubeau is denied. *See Ultratech, Inc. v. Tamarack Scientific Co.*, 2005 WL 696979, *1 (N.D.Cal. March 17, 2005) ("The emergency was created by [movant], by waiting until the last minute to notice these expert depositions.").

Complex cases such as this one must have enforceable discovery deadlines. *Harris v. Owens-Corning Fiberglass Corp.*,102 F.3d 1429, 1433 (7th Cir. 1996). The practical and institutional reasons for the need for finality are all too apparent. First, there is the inevitable shortness of life. Beyond that, "[t]ime limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations." *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994). Without them there would be no end to litigation.

## C
## The Cooperation Agreement And The Motion For A Finding Of "Satisfactory Cooperation"

There is a final point that needs to be discussed. The plaintiffs argued for the first time in their reply brief that their Cooperation Agreement with Marsulex and Chemtrade, pursuant to the Antitrust Criminal

---

[9] Rather than an explanation, there is the claim that Marsulex, in violation of its Cooperation Agreement with the plaintiffs, failed to provide "full cooperation in producing witnesses for interviews, depositions and trial." (*Plaintiffs' Reply in Support of their Motion to Compel*, at 8). This argument is discussed at 13-15, *infra*. There was certainly nothing in the many months preceding the deposition notices that prevented the plaintiffs from deposing Mr. Cadwell and Ms. Dubeau. Moreover, it is unclear what more was to be expected of Marsulex, given the lateness of the deposition notices. Marsulex responded almost immediately that the dates would be a problem. Given the exigent circumstances, one would have expected immediate action by plaintiffs. Yet, two weeks passed with no input from them.

13

Penalty Enforcement and Reform Act of 2004 (the "Act"), required granting of the motion to compel.[10]

According to the reply brief, the Agreement obligated Marsulex and Chemtrade to provide "full cooperation" in providing witnesses for interviews, depositions and trial, and that the Agreement had been breached as it pertained to Mr. Cadwell and Ms. Dubeau. (*Reply*, at 8). Given the lateness of the argument, Marsulex and Chemtrade moved to strike any reference to the Cooperation Agreement.[11]

There is substantial merit to the defendants' position that arguments raised for the first time in a reply brief are waived, and that the court should disregard or strike the arguments. *See Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004). Application of the waiver doctrine in this context ensures that a party's right to be heard is not abridged and that the court does not have a one-sided presentation, with its inevitably adverse effects on the accuracy of the judicial process. *Cf. Adamson v. California*, 332 U.S. 45, 59 (1946)(Frankfurter, J., concurring)("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful arguments on both sides...."); Brandeis, *The Living Law*, 10 Ill. L. Rev. 461, 470 (1916) ("a judge rarely performs his functions adequately unless the case before him is adequately presented.").

However, courts also have discretion to allow the filing of a surreply. *Johnny Blastoff, Inc. v. Los*

---

[10] The Act and Marsulex and Chemtrade's Leniency Agreement with the government are discussed in their Memorandum of Law in Support of Their Agreed Motion for a Finding of "Satisfactory Cooperation" and Limitation of Damages Pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 filed with Judge Coar on June 30, 2005.

[11] Courts are uniform in holding that the kind of gamesmanship involved in getting the last word, is improper and has no place in the judicial system. *Pike v. Caldera*, 188 F.R.D. 519, 537 (S.D. Ind. 1999); *United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976) (condemning "gamesmanship in getting the last word"). That is what occurs, whether intended or not, where, as here, a party advances arguments and provides new factual supporting information in a reply brief.

*Angeles Rams Football Co.*, 188 F.3d 427, 439 (7th Cir. 1999), *cert. denied* 528 U.S. 1188 (2000); *Beard v. Seagate Technology*, 145 F.3d 1159 (10th Cir. 1998); *Commonwealth Edison v. NRC*, 830 F.2d 610, 621 (7th Cir. 1987); *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002); *Gold v. Wolpert*, 876 F.2d 1327, 1330 n.6 (7th Cir. 1989). This vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision. Because of the possibility that the Cooperation Agreement was relevant to proper resolution of the motion to compel, I initially asked for additional briefing and requested a copy of the Agreement. Having reviewed the Agreement (which remains under seal), it now appears that further briefing is unnecessary.

There is nothing in the Agreement that supports the plaintiffs' argument. As the defendants' motion to strike correctly points out, the plaintiffs' parsing of the Cooperation Agreement is somewhat inaccurate. The difficulty is not what is quoted, but what is omitted. Indeed, by selectively excising a single sentence from the Agreement, while ignoring other provisions, the reply brief is quite misleading.

The Agreement does require Marsulex and Chemtrade to provide "full cooperation" "with respect to discovery...." But this general clause is set forth under the heading, "C. DOCUMENTS." What the reply brief carefully omitted was the truly relevant portion of the Agreement, which appears under the apt heading, "D. WITNESSES." It states that §213(3)(b) of the Act requires the defendants "to use their best efforts to secure and facilitate from cooperating individuals their participation in ... depositions...." And here is the decisive provision: "Marsulex and Chemtrade agree to make available, upon *reasonable notice*, their current directors, officers and employees who are believed to have [relevant] knowledge ... by ..

15

. (iii) providing testimony at deposition. . . ." (Emphasis supplied).[12] Thus, for purposes of the present

motion, the Agreement does not impose on the defendants obligations that preclude them from claiming that

the notices of deposition were untimely and unreasonable. In short, the Cooperation Agreement did not

require Marsulex and Chemtrade to be at the plaintiffs' beck and call.[13]

This is enough to resolve the issue. But there is an additional factor. On June 30, 2005, Marsulex

counsel, Mr. Ehlman, informed plaintiffs' counsel that the dates in the deposition notices were unavailable.

It was agreed that Mr. Ehlman would "get back to [plaintiffs' counsel] by Tuesday, July 5. . . ."

Nonetheless, on June 30th, plaintiffs joined in the defendants' motion seeking from Judge Coar a

certification of "satisfactory cooperation" under the Act. The next day, July 1, they filed the motion to

compel claiming, in effect, that Marsulex's cooperation was anything but satisfactory. On July 7, 2005,

Judge Coar entered the very order that the plaintiffs urged him to, finding that Marsulex and Chemtrade

had satisfactorily performed their part of the bargain under the Agreement.

Two doctrines, either separately or in combination, require that, as to the reasonableness of the

Marsulex employees notices, the plaintiffs' motion should be denied. First is the doctrine of judicial

estoppel. Litigants who take one view of the facts and prevail are equitably estopped to assert the opposite

---

[12] It is quite clear that Section "D. WITNESSES" is a specific provision that under basic principles of contract construction controls the far more general reference to full cooperation in Section "C. DOCUMENTS." *See Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 984 F.2d 223, 227 (7th Cir. 1993); Restatement (Second) of Contracts, §203(c) (1981).

[13] The Agreement tracks § 213(b) of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004. Section 213(b) provides that a party is entitled to the single-damages limitation of §213(a) if the court determines that the party has provided "satisfactory cooperation" to the plaintiffs, including "using its best efforts to secure and facilitate from cooperating witnesses" their "availab[ility] for such interviews, depositions, or testimony in connection with the civil action as the claimant may *reasonably* require." (H.R. 1086, 108th Cong., 150 Cong.Rec. H3656, Title II, Section 213(b)(3)(A)(i); (B)(Emphasis supplied)).

16

later. *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390, 392 (7th Cir. 2005). The second is the law of the case doctrine. *See Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905 (7th Cir. 2005). To the extent that plaintiffs argue that Marsulex has somehow breached the agreement – unconvincingly, given the facts of the case – they are met with Judge Coar's July 7, 2005 finding of "Satisfactory Cooperation," which plaintiffs have not moved to vacate and thus have effectively ratified.

## III.
## THE MOTIONS FOR ATTORNEYS' FEES

Finally, there is the question of attorneys' fees. Rule 37(a)(4)(B) provides that if a motion for an order compelling discovery is denied, the court "shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion, or both of them, to pay to the party or deponent who opposed the motion the reasonable expenses occurred in opposing the motion, including attorneys' fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." "'The great operative principle of Rule 37(a)(4) is that the loser pays.'" *Rickels v. City of South Bend, Indiana*, 33 F.3d 785, 786 (7th Cir. 1994). Fee shifting, when the judge must rule on discovery disputes, encourages their voluntary resolution and curtails the ability of litigants to use the legal process "to heap detriments on adversaries. . . without regard to the merits of the claim." *Id.*

Since Rule 37(a)(4) is bottomed on the principle of deterrence, 7 Moore's Federal Practice at §37.23[1] at 37-42, where a fee award will not discourage abuses of the discovery process, a motion for fees should not be granted. In the instant case, the very reasons that require denial of the motion to compel

17

strongly suggest that an award of fees here would not further the goal of deterrence and would be "unjust."

Discovery was rapidly coming to a close, and there was a heightened sense of the need to complete

discovery, which the plaintiffs believed to be significant to their case. Whether the Marsulex deposition

notices were timely under the circumstances was reasonably debatable, and thus, is substantially justified

within the meaning of Rule 37(a)(4). 7 Moore's Federal Practice, §37.23[2] (2004).

While the insistence that the defendants have not complied with certain of the interrogatories cannot

be deemed objectively reasonable, where, as here, a motion to compel is granted in part and denied in part,

a court may apportion the reasonable expenses incurred in relation to the motion in a just manner. Rule

37(a)(4)(C); 7 Moore's §37.23 [4][b]. An appropriate resolution of the competing motions for fees under

the circumstances of this case – and one which is faithful to the discretion to apportion reasonable expenses

– is to deny the parties' respective motions for fees.

### CONCLUSION

For the foregoing reasons, the plaintiffs' motion to compel defendants, Koch Industries, Inc. and

Marsulex, Inc., [#168] to comply with certain outstanding discovery requests is GRANTED in part and

DENIED in part. The motion of defendants, Koch Industries, Inc, and Marsulex, Inc., to strike certain

portions of plaintiffs reply memorandum [#210] is denied. The cross-motions for fees [#168 and #210]

are also denied.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 8-26-05

18