A E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re SULFURIC ACID ANTITRUST LITIGATION | MDL Docket No. 1536<br>Case No. 03 C 4576<br><br>Judge David Coar<br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

During the course of discovery in this multi-district antitrust suit, in which plaintiffs allege that the defendants engaged in a conspiracy to raise, fix, maintain or stabilize the price of sulfuric acid in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, plaintiffs deposed Kevin Cannon, Kim Ross, and Tony DeSanti. The plaintiffs have characterized them as "three of the most key witnesses in this litigation." I previously rejected plaintiffs' arguments in support of an additional deposition of Mr. DeSanti. Mr. DeSanti, who has retired from defendant Falconbridge, lives in Canada, and is beyond the defendants' control and the plaintiffs' subpoena power. Plaintiffs have, accordingly, withdrawn that portion of their motion. (*Reply in Support of Plaintiffs' Motion to Compel Deposition Testimony*, at 6). Plaintiffs have resolved the issues regarding Mr. Cannon's deposition with Mr. Cannon's counsel and have withdrawn that portion of their motion as moot. (*Reply in Support of Plaintiffs' Motion to Compel Deposition Testimony*, at 1 n.1). That leaves Kim Ross, who was deposed in mid-April 2005 for almost 17 hours.

Despite having deposed Mr. Ross so extensively, the plaintiffs' motion insists that Mr. Ross must be deposed again so that he can decipher his handwritten journal entries and notes, which according to plaintiffs, were taken concurrently with "anti-competitive and collusive meeting and events at issue in this

case." According to the plaintiffs, the handwritten notes produced by the Noranda defendants ran into the hundreds of pages. (*Plaintiffs' Motion to Compel Further Deposition Testimony*, at 3, 8). The notes had been produced by December of 2004, if not a good deal earlier.[1] Because of their claimed criticality to the plaintiffs' case and the absence of the evidence in any other form, the plaintiffs argue that it is essential that they be allowed to take a supplemental deposition, limited to four hours and 30 to 50 pages of notes, which would be provided in advance of the renewed deposition. For the reasons discussed below, plaintiffs' motion is denied.

# I
# FACTUAL BACKGROUND
## A
### The Previous Deposition of Kim Ross

Plaintiffs deposed Mr. Ross on April 14 and 15, 2005, in Toronto, Canada. Mr. Ross has been in the employ of the Noranda defendants for nearly 15 years and had the day-to-day responsibility for the sale of sulfuric acid. He helped create the joint venture among the Noranda defendants and was president of Noranda Dupont LLC from 1998 to 2001. By agreement of counsel, Mr. Ross's deposition exceeded – indeed, more than doubled – the one-day, seven-hour time limit set by Rule 30(d)(2), Federal Rules of Civil Procedure. Mr. Ross's deposition ran for about eight hours on April 14th and eight hours and forty-five minutes on April 15th. On the first day, plaintiffs began their examination of Mr. Ross at 9:33 a.m., broke for lunch at 12:25 p.m. (Ross Deposition. at 7, 125), and continued from 1:25 to 6:42 p.m.

---

[1] The Noranda defendants contend that the handwritten notes were produced over a year before the witnesses were deposed the first time, but do not refer to any proof of the actual date of production. (*Noranda Defendants' Opposition to Plaintiffs' Motion to Compel*, at 3). Plaintiffs, however, do not dispute this claim. In any event, it is clear that plaintiffs had the handwritten notes prior to Mr. DeSanti's deposition on December 21, 2004. (*Noranda Defendants' Opposition to Plaintiffs' Motion to Compel*, Ex. 2).

2

(Deposition. of Ross, at 126, 301). The sessions on the second day ran from 9:49 a.m. to 12:54 p.m. (Ross Deposition. at 313, 432), and from 2:05 p.m. until 7:45 p.m. (Ross Deposition. at 433, 631).

The record makes clear that the issue of the illegibility of Mr. Ross's notes and how to prioritize the time allotted to deal with that issue and the myriad of others that would comprise the deposition had been considered by plaintiffs' counsel. On the morning of the first day of the deposition, she asked Mr. Ross to decipher certain notes that she thought significant:

> Plaintiffs' counsel: Okay. Could you for the record read to me your notes as best you can into the record?
>
> Defendants' counsel: Which notes?
>
> Plaintiffs' counsel: These notes.
>
> Defendants' counsel: All these notes?
>
> Plaintiffs' counsel: Yes.
>
> Defendants' counsel: You want him to read what's on these notes?
>
> Plaintiffs' counsel: Yes. Unless you want to – if you have another way to do it. If you want to transcribe it for me with his direction, that's okay, too, and we don't have to waste time on the record. I just want to make sure that we can read his writing.
>
> Defendants' counsel: Why don't we consider that option at lunch?
>
> Plaintiffs' counsel: Okay. All right. Because what I want to do is I want to make sure that I'm not – that I can read his handwriting, and the only way to do that is to get him to either read it or transcribe it for me.
>
> Defendants' counsel: Okay. We'll consider that at lunch.
>
> Plaintiffs' counsel: Okay.

(Ross Deposition. at 124-25).

When the deposition resumed after lunch, neither the plaintiffs' nor the defendants' counsel brought up the subject of Mr. Ross's notes. The plaintiffs' counsel proceeded with questioning, and did not mention the issue the rest of that afternoon or the next day, until 7:34 p.m., when the deposition ended:

> The Videographer: This concludes today's proceedings in the deposition of Kim Ross. The number of tapes used today was four, in total for two days, eight. We're going off the video record at - the time is 7:34 p.m.
>
> Plaintiffs' counsel: David, I just want to put a statement on the record. We had – I had – yesterday I had said I had some handwritten notes that I believe were Mr. Ross's but I wasn't sure and I couldn't read the handwriting on them, and I asked you if you wanted him to read them on the record or whether we could – we could get them transcribed and save the time for him reading on the record, and you had told me today that you wanted them read on the record.
>
> Defendants' counsel: Or I wanted you to cover them on the record.
>
> Plaintiffs' counsel: Right. And since we're out of time, where - unless you want to reconsider transcribing them, we are reserving our right to ask him to come back to translate these - these notes.
>
> Defendants' counsel: You don't have a right to ask him to come back. You had two full days. You had 14 hours of examination. You could have asked him to review or translate those notes, like you have the other notes that you used during the course. You made the choice as to what to cover, you and your counsel.
>
> * * *
>
> Defendants' counsel: Well, as you know, you're entitled to one day. We gave you two days without fight – fighting over it as a matter of accommodation. You're not entitled to another day. You've known about Mr. Ross. You've had his documents for months and months and months. You could have chosen what to cover with him. It shouldn't come to any surprise to you that I disagree that you covered your time appropriately. I think you could have covered all this in one day, frankly. And we will not produce Mr. Ross again without court order and we'll vigorously oppose any efforts that you might make to get one.
>
> Plaintiffs' counsel: The other thing I just was going to add about the notes is that I just found out the middle of the day today that – that you were not agreeing to transcribe

4

them. But also, I can't ask Mr. Ross questions about them if I can't read them, and I can't read a lot of them. So it's – you know, I think you should reconsider your position on transcribing them.

Defendants' counsel: Well, with respect to the notes, I told you yesterday that you should cover any notes with him that you wanted to cover in his deposition.

Plaintiffs' counsel: Well, I don't what to – I don't know whether I want to ask him about them if I can't read them. That's the problem.

Defendants' counsel: Right.

Plaintiffs' counsel: It makes the process of selecting documents in preparing for this deposition rather impossible to do if you can't read the notes. And I believe Mr. Ross kept extensive notes over a very lengthy period of time and we were not able to prepare for the deposition without being able to interpret all his notes.

Defendants' counsel: Well, you've had the notes for probably more than a year, certainly in most cases a year and a half. You never – you never made a request to me in advance of this deposition with respect to these notes or interpreting them.

(Ross Dep. at 626-27, 629-31).

## B
## Activity Following the Depositions

On May 26, 2005, the plaintiffs, without the court approval required by Rule 30(a)(2)(B), served a notice for a second deposition of Mr. Ross purportedly "pursuant to Rule 30(b) of the Federal Rules of Civil Procedure." The notice advised that the scope of questions at the further deposition would not be limited to the "ascertainment of the text the witness wrote in various handwritten notes produced in discovery," but would include, in addition, "matters arising out of the content of such handwritten notes." (*Plaintiffs' Motion to Compel Further Deposition Testimony*, Ex. A)(Emphasis supplied).

On June 6, 2005, counsel for the Noranda defendants responded to the notice with a letter formally objecting to the notice on the grounds that it was "contrary to the Federal Rules of Civil Procedure," as well

as "prior agreements between counsel." (Noranda Defendants' Opposition to Plaintiffs' Motion to Compel, Ex. 6). Plaintiffs did not reply to this letter. Nearly a month later, however, on July 1st – the day discovery closed – they filed the instant "Motion To Compel Further Deposition Testimony From Kim Ross, Kevin Cannon and Tony DeSanti Re: Handwritten Notes." This was one of a miscellany of discovery motions filed by the plaintiffs on that day.

## II
## ANALYSIS
### A.
### The Plaintiffs' Deposition Notices Violated Rule 30(a)(2)(B)

**1.**

Under Fed.R.Civ.P. 30(a)(2)(B):

> (2) A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if the person to be examined is confined in prison or if, without the written stipulation of the parties,
>
> \* \* \*
>
> (B) the person to be examined already has been deposed in the case;
>
> \* \* \*

The rule is quite clear and quite simple. Because the plaintiffs issued their notice for a second deposition of Mr. Ross without first seeking leave of the court, the notice was invalid under the Rule. This should come as no surprise to the plaintiffs, as they have, in this case, refused to submit to certain of defendants' deposition notices on identical grounds. (*Plaintiffs' Response to the Noranda Defendants' Motion to Compel Rule 30(b)(6) Depositions of All Named Plaintiffs*, at 3-5). Just as the defendants' attempt to take additional depositions without court permission was disallowed, *see In re Sulfuric Acid Antitrust Litigation*, No. 03 C 4576 / MDL No. 1536, 2005 WL 1994105 (N.D.Ill. Aug. 19, 2005), so too is the plaintiffs' attempted evasion of the Rule.

Curiously, plaintiffs submit that they are actually *following* Rule 30(a)(2)(B)'s requirements, because their motion seeks leave to proceed with the additional deposition. But the present compliance only came after the plaintiffs violated the Rule, by noticing the second depositions *without* first seeking court approval. Those notices, as a result, were invalid, and accordingly, the defendants' objections to them were valid. *In re Sulfuric Acid Antitrust Litigation*, No. 03 C 4576 / MDL No. 1536, 2005 WL 1994105 (N.D.Ill. Aug. 19, 2005). The plaintiffs' characterization of their motion as a motion in conformity with Rule 30(a)(2)(B) leaves them in a rather awkward position: the motion was filed on July 1, 2005. Judge Coar's Standing Order requires that "[a]ll discovery requests/notices should be initiated in time for responses to be completed (within the time set forth in the Federal Rules) by the discovery cut-off date." (Supplemental Standing Order On Pretrial Procedures In Civil Cases, ¶(A)(6)). In addition, under Local Rule 16.1, Standing Order Establishing Pretrial Procedure, ¶ 4, "discovery must be *completed* before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order." (Emphasis in original).

Obviously, if plaintiffs truly were – as they now argue – seeking leave under Rule 30(a)(2)(B) to take a successive deposition of Mr. Ross, by doing so on the day discovery closed, they violated both Judge Coar's Standing Order and the Local Rule, because it would have been impossible to complete – or even schedule – the depositions by the discovery deadline. Thus, the motion must be denied. *See Sofo v. Pan-American Life Insurance. Co.*, 13 F.3d 239, 242 (7th Cir. 1994)(court did not abuse its discretion by granting defendants a protective order where plaintiff failed to request discovery until nine days before the cutoff, violating Standing Order); *Coram Health Care Corp. of Illinois v. MCI Worldcom Communications, Inc.*, No. 01 C 1096, 2001 WL 1467681, *3 (N.D.Ill. Nov. 15, 2001)(where

7

plaintiffs' conduct violated this court's standing order, defendants were under no obligation to respond); *Fahey v. Creo Products, Inc.*, No. 96 C 5709, 1998 WL 474114, at *2 (N.D.Ill. Aug. 4, 1998). *See also Tomeenginharia E. Transportes, Ltda. v. Malki*, 1999 WL 1027543 (N.D.Ill. 1999)(Document request attached to a notice of deposition was untimely where the date for compliance under the Federal Rules of Civil Procedure was after the date set by the district court for the deposition).

## 2.

The plaintiffs have another version of their motion to compel. It is to be found, for the first time in their reply brief, where it is suggested plaintiffs are not seeking an *additional deposition* of Mr. Ross, but merely *additional time* to depose him under Fed.R.Civ.P. 30(d)(2). "Objections to this startling thesis crowd the mind." Posner, Overcoming Law, 211 (1995).

The invalid deposition notice (i.e., served without permission) was served on May 26, 2005 pursuant to Rule 30(b) – the subsection dealing with successive depositions – not 30(d)(2), the subsection dealing with duration of depositions. (*Plaintiffs' Motion to Compel Further Deposition Testimony*, Ex. A). Beyond this revealing designation, the plaintiffs' attempt to distinguish an "additional deposition" from "additional time" to take a deposition, under the circumstances of this case, subordinates reality to semantics. The Supreme Court has warned time and again against precisely this sort of inversion, insisting that "the logic of words should yield to the logic of realities." *DiSanto v. Pennsylvania*, 273 U.S. 34, 43 (1927).[2] So has the Seventh Circuit. *See Schmidt v. Ottawa Medical Center*, 322 F.3d 461, 464 (7th

---

[2] *See also, Bowen v. Gilliard*, 483 U.S. 587, 605 (1987); *W.B. Worthen Co. ex. rel. Board of Commissioners v. Kavanaugh*, 295 U.S. 56, 62 (1935)("What controls our judgment... is the underlying reality rather than the form or label.")(Cardozo, J.); *In re Winship*, 397 U.S. 358, 365-66 (1970). *See also Pleasants v. Greenhow*, 114 U.S. 323, 337 (1885)(Bradley, J., dissenting)("It is useless to attempt
(continued...)

Cir. 2003); *Mueller Co. v. FTC*, 323 F.2d 44, 49 (7th Cir. 1963). *Cf. Pernice v City of Chicago*, 237 F.3d 783, 786 (7th Cir. 2001)("[A]rtful pleading cannot remove us entirely from reality."); *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking*, 313 F.3d 385, 389 (7th Cir. 2002)(improper to attempt to circumvent applicable rules by use of labels).

The inescapable reality in this case is that Mr. Ross's almost 17-hour, two day deposition ended in mid-April 2005. The plaintiffs now want another go at him, and not merely to have him decipher the text of his notes, but to have him testify about "matters arising out of the content" of his notes. The rules do not allow for endless depositions, the modern form of trial by ordeal. It does not matter whether the plaintiffs choose to call their motion one for additional time or an additional deposition. The result is the same.

In every deposition, choices have to be made about the subject matter to be covered. The 7-hour rule necessitates, especially in complex cases, that almost all depositions will be under-inclusive. The examiner therefore, must be selective and carefully decide how to apportion her time.[3] If, as we are now told, the notes were so critical to the case, then other areas of inquiry had to be subordinated to having Mr. Ross interpret his notes -- or at least a sampling of them a the plaintiffs now say they will be satisfied with

---

[2](...continued)
to deceive ourselves by an adroit use of words, or by a train of metaphysical reasoning. We cannot, in that way, change the nature of things.").

[3] The decision of what to ask at a deposition is no different than the decision of what to include in a brief in a court of appeals or the Supreme Court. There, one is limited by word count, making it impossible to include every argument one desires and to say as much about each argument at one perhaps would like. The content of a deposition is constrained by temporal limitations, but they are no less constricting.

if they are allowed to resume the deposition.[4] The plaintiffs' counsel clearly understood this, as evidenced by her questioning on the morning of the first day of the deposition. She chose not to resume the questioning after the luncheon recess and to put the matter off until 7:34 p.m. the next day, after she had finished her second day of questioning. No one forced her to do so. She made a conscious decision of how to proceed with her own deposition. As the defendant's counsel put it in refusing to allow the deposition, in effect, to continue: "You made the choice as to what to cover, you and your counsel." He was absolutely right, and the plaintiffs are bound by the tactical decisions they made months before the deposition began.

There is some suggestion that all that occurred was really attributable to the defendants' failure to have returned from the luncheon recess and dealt with the question of Mr. Ross's reading of his notes. Perhaps the defendants' lawyer should have broached the issue when the deposition resumed. But he did not, and that omission did not justify the plaintiffs' lawyer's post-luncheon decision to continue the deposition for a day and a half and then, only at the end, insist that she had the right to continue on to deal with a topic that she consciously abandoned. It was up to her to seek a resolution of the problem of Mr. Ross's notes when the deposition resumed on April 14 – especially since the problem was the plaintiffs' not the defendants'. The very premise of the "he failed to live up to his obligations" argument is incompatible with the basic principle that a lawyer's responsibilities to her client cannot be shifted to someone else, and those responsibilities most assuredly do not depend upon the inactions or actions of one's adversary.

---

[4] The plaintiffs' motion seeks an additional four hours to depose Mr. Ross about 30 to 50 pages of his notes which they will provide to him in advance of the deposition. This procedure could easily have been followed, or at least attempted, during his deposition in April.

10

Under the plaintiffs' view of things – and this is apparently the argument, because if it is not, it has no meaning – when the defense counsel breached his "promise" to raise the issue of the notes following the first luncheon recess, that was a sufficient excuse for the plaintiffs to conduct the balance of the deposition as though the problem did not exist, to wait six weeks before impermissibly noticing further depositions without court approval, and wait another five weeks before filing a motion to compel the improperly noticed depositions – and to do so on the day discovery closed. If this is truly the defendants' argument, it is rejected.

### 3.

The plaintiffs were aware shortly after Mr. Ross's deposition concluded on April 15th that more time was needed if they were to get the notes transcribed. One would have assumed they would have taken action. They didn't. Instead, they waited four and a half months, until August 31st – two months after discovery closed, to raise the theory that all that was sought was "additional time" to take a deposition under Rule 30(d)(2), not permission to take "an additional deposition" under Rule 30(a)(2)(B). Apart from its substantive invalidity, the argument, coming as it did in a reply brief, comes too late. *Wright v. United States*, 139 F.3d 551 (7th Cir. 1998). "A reply brief is for replying" not for raising essentially new matters that could have been advanced in the opening brief." *Hussein v. Oshkosh Motor Truck Company*, 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring). *See also United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976) (condemning "gamesmanship in getting the last word"). Because plaintiffs did not raise their Rule 30(d)(2) argument until their reply memorandum, it is waived. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir.2004).

## B
## The Plaintiffs Have Unduly Delayed Filing the Motion to Compel and Addressing the Issue of the Handwritten Notes

"Defer no time, delays have dangerous ends." Henry VI, Part 1 (1592), act III, sc. ii, 1.33.[5] In litigation, delays need not be deliberate to be dangerous; even when they are merely the product of inattention, they can lead to undesired results. *Brosted v. Unum Life Insurance. Co. of America*, _ F.3d _, 2005 WL 2043820 (7th Cir. 2005).[6] "Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851 (7th Cir. 2002). And, if a party has unduly delayed in filing a motion for an order compelling discovery, a court may conclude that the motion is untimely. *Banks v. CBOCS West, Inc.*, 2004 WL 723767 at *1 (N.D.Ill. 2004)(Zagel, J.); 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure, §2285 (2nd ed. 1994).

Here, after two extensions of the discovery deadline, Judge Coar was adamant that no further extensions would be allowed in his order of March 21, 2005. Plaintiffs, armed with documents produced perhaps a year earlier, deposed Mr. Ross on April 14th and 15th. But even after having Mr. Ross's

---

[5] The Seventh Circuit is partial to Twelfth Night: *Sanders v. Venture Shores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995)("In delays there lies no plenty.").

[6] In *Brosted*, the district court set a discovery deadline of March 31, 2004, which was extended to May 31, 2004, upon the plaintiff's motion. During late February and early March, the plaintiff sought the production of documents and noticed three depositions. On April 7, 2004, the defendants filed a motion for a protective order, which effectively put the discovery on hold. The district court denied defendants' motion on July 1, 2005. That same day, and apparently before the district court had ruled, the plaintiff filed a motion to enlarge the discovery deadline.
The district court denied that motion as moot, discovery having closed May 31st. On appeal, the plaintiff claimed that the district court erred in denying his motion for an extension of time because he still needed to depose three witnesses. The Seventh Circuit held that even though discovery had effectively been stayed and plaintiff could not have taken the depositions, the plaintiff should have filed his motion before the discovery deadline. *Brosted*, 2005 WL 2043820, *3.

handwritten notes for all that time, plaintiffs claim that they had not been able adequately to prepare for the depositions due to the illegibility of many of those notes.

It was apparent to the plaintiffs from the moment they received the notes in discovery that there was a problem in deciphering them. They obtained an agreement to extend the deposition from seven to more than fourteen hours for Mr. Ross, but apparently never raised the issue of the notes with defense counsel. Whether they factored the issue into their calculation of how much time should be allotted for each topic of inquiry is uncertain. But if they did not, they cannot blame their adversaries for balking over an issue that should have been factored into the plaintiffs' calculations. Having agreed to a two-day deposition, the plaintiffs were not at liberty to use all their time on matters other than the notes and then insist that they had been somehow deprived of their right to depose Mr. Ross in a meaningful way and that they had the "right" to redepose him, or in the parlance of the reply brief, to have "additional time" for the deposition.

The present motion, however interpreted, is a breach of an agreement reached with the defendants. All the relevant facts, including the indecipherability of the notes, were known to the plaintiffs. Nothing has changed that would warrant granting more time to the plaintiffs, even if that could be done without violating Judge Coar's standing order and Local Rule 16.1.

The present motion is, in addition, unduly late. The plaintiffs had many, many months to assess the question of the illegibility of Mr. Ross's notes, and they could have sought transcriptions of the notes *before* the depositions. Whether the defendants would have agreed is a different question; but we will never know how they would have reacted since the plaintiffs never raised the question with defense counsel. Thus, by the time of the deposition, the die had been cast, and the plaintiffs had to decide whether to use a segment of the time for translating the notes or relinquish that topic in favor of others. They chose the latter.

13

From the time Mr. Ross's deposition ended on April 15th, the plaintiffs did nothing about the issue of the notes, not that week, not that month. Instead, they waited some six weeks until May 26, 2005, when only about a month of discovery remained, to serve an invalid deposition notice on him in violation of Rule 30(a)(2)(B). Following the defense objection on June 6th, which they knew was certain to come, the plaintiffs did nothing for nearly four more weeks. This delay is indefensible and inexplicable. Only on the last day of discovery did they file the "Motion to Compel the Further Deposition Testimony From Kim Ross, Kevin Cannon, and Tony DeSanti Re Handwritten Notes." It is unfathomable what plaintiffs hoped to accomplish by waiting until that point, unless they thought they would obtain the practical equivalent of a discovery extension – which Judge Coar had already indicated would not be allowed.

The timing of plaintiffs' motion is all the more curious when viewed with the balance of their motion practice in this case. On the day discovery closed, July 1st, plaintiffs filed three motions to compel discovery: a motion directed at GAC; a combined motion addressing several distinct discovery problems plaintiffs had separately with Noranda defendants, with Koch, and with Marsulex; and the instant motion seeking the three additional depositions. The various discovery problems these motions sought to address were unrelated, save for having occurred in the same case. More importantly, the various discovery problems occurred at different points in the litigation. GAC, for example, began objecting to plaintiffs' discovery requests as early as October of 2004; plaintiffs threatened a motion to compel regarding that matter shortly thereafter. The threats persisted apace with inaction.

The plaintiffs' problems with Koch did not come to a head until June of 2005, when Koch filed its supplemental responses. Here, as already discussed, things unraveled by April 15, 2005. And Mr. DeSanti's deposition – which was originally a topic of this motion, concluded on December 21, 2004. Yet,

14

for some unexplained reason, plaintiffs chose July 1st as the best day to address all these unrelated discovery issues, which occurred weeks and even months apart. The only explanation for the concurrence of these motions on the day discovery closed is that plaintiffs, having delayed too long and planned too little, found themselves out of time, and out of options. This is viewing the situation in a light most favorable to the plaintiffs. A cynic might think that all of this was a calculated decision designed to effect another extension of the discovery deadline. It does not matter, however, which view one takes, the result is the same. The motion is denied.

## CONCLUSION

For the foregoing reasons, the plaintiffs' "Motion to Compel the Further Deposition Testimony From Kim Ross, Kevin Cannon, and Tony DeSanti Re Handwritten Notes" [# 166] is DENIED. The defendants are awarded reasonable attorneys' fees pursuant to Rule 37(a)(4).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: September 7, 2005