**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE SULFURIC ACID ANTITRUST LITIGATION | : | MDL Docket No. 1536<br>Case No. 03 C 4576 |
| | : | Honorable Judge David H. Coar<br>Magistrate Judge Jeffrey Cole |
| This Document Relates To:<br><br>ALL RELATED ACTIONS | : | |

**APPENDIX TO MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO BAR THE OPINIONS OF DR. McCLAVE AND DR. TOLLISON PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)**

(Exhibits H, I, J and K Filed Under Seal)

# EXHIBIT A

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| | | | |
|---|---|---|---|
| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
| CASE NUMBER | 03 C 4576 - MDL 1536 | DATE | 7/21/2004 |
| CASE TITLE | In Re: Sulfuric Acid Antitrust Litigation: This document relates to all related actions | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] All objections having resolved, The Plaintiffs' Motion for Entry of Amended Scheduling Order is Granted. New Defendants to answer or plead to the 2nd Consolidated Amended Complaint on or before 7/30/04. Fact discovery to close on 4/29/05. Experts to be disclosed on 6/30/04 by plaintiffs and the defendants to disclose on 9/2/05. Plaintiffs to disclose rebuttal experts by 11/4/05. Expert discovery to close on 12/16/05. Dispositive motions due on or before 2/1/06. See order regarding the taking/number of depositions. ENTER ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | number of notices |
| | No notices required. | | JUL 22 2004 date docketed |
| | Notices mailed by judge's staff. | | docketing deputy initials |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK 2004 JUL 21 PM 3:50 FILED | date mailed notice |
| ✓ | Docketing to mail notices. | | mailing deputy initials |
| | Mail AO 450 form. | | Document Number 85 |
| | Copy to judge/magistrate judge. | | |
| PAMF | courtroom deputy's initials | Date/time received in central Clerk's Office | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED
JUL 2 2 2004

| | |
|---|---|
| **IN RE SULFURIC ACID ANTITRUST LITIGATION** | **MDL Docket No. 1536**<br>**Case No. 03 C 4576** |
| This Document Relates To:<br><br>ALL RELATED ACTIONS | **Honorable Judge David H. Coar**<br>**Magistrate Judge Sidney I. Schenkier** |

**<u>ORDER</u>**

This matter coming onto be heard on Plaintiffs' Motion for Entry of Amended Scheduling Order.

THIS COURT HEREBY ORDERS that the Scheduling Order entered by the Court on July 29, 2003 is amended, in relevant part, as follows:

1. New defendants, <u>i.e.</u>, defendants named for the first time in the Second Consolidated Amended Complaint, to answer or plead to the Complaint on or before July 30, 2004;

2. Fact discovery ordered closed on April 29, 2005;

3. Plaintiffs shall disclose expert testimony pursuant to Rule 26(a)(2) on or before June 30, 2005;

4. Defendants shall disclose expert testimony pursuant to Rule 26(a)(2) on or before September 2, 2005;

5. Plaintiffs shall disclose any rebuttal expert testimony pursuant to Rule 26(a)(2)(c) on or before November 4, 2005;

6. Expert discovery ordered closed on December 16, 2005;

7. Dispositive motions are due on or before February 1, 2006; and

8. Plaintiffs are, in the first instance, limited to taking 35 full days of depositions which may be taken either as full day depositions or half day depositions [i.e., 25

5896

85

full day depositions plus 20 half day depositions equals 35 deposition days].The total number of witnesses, whether deposed for a full or half day, may not exceed 50. For good cause shown, Plaintiffs may seek leave of court to take additional depositions.

IT IS SO ORDERED.

BY THE COURT:

David H. Coar

HONORABLE DAVID H. COAR

July 21, 2004

# EXHIBIT B

FILED
JUN 14 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE SULFURIC ACID ANTITRUST LITIGATION** | : | **MDL Docket No. 1536** |
| | : | **Case No. 03 C 4576** |
| | : | |
| **This Document Relates To:** | : | **Honorable Judge David H. Coar** |
| | : | **Magistrate Judge Jeffrey Cole** |
| **ALL RELATED ACTIONS** | : | |

**PLAINTIFFS' MOTION FOR ENTRY OF REVISED SCHEDULING ORDER**

Plaintiffs, by and through their undersigned counsel, respectfully move this Court for an order conforming its Order of March 21, 2005 with the litigation event deadlines previously set forth in its prior Order of July 21, 2004.

1. On July 21, 2004, this Court issued a scheduling order setting forth a date for the close of fact discovery, for the disclosure of expert testimony and for several subsequent litigation events to take place thereafter. See Exhibit A, July 21, 2004 Order.

2. On March 15, 2005, plaintiffs filed a motion that sought an extension of the deadline for the close of fact discovery, "together with a commensurate extension of the remaining deadlines set forth in the schedule" by the same period of time. See Exhibit B, Plaintiffs' March 15, 2005 Motion for Extension of Discovery at p. 1.

3. By Order dated March 21, 2005, the Court granted plaintiffs' motion and extended fact discovery an additional 60 days, from April 29, 2005 to July 1, 2005. See Exhibit C, March 21, 2005 Order. The Court's Order made no reference to plaintiffs' request to have all remaining deadlines adjusted by a corresponding length of time. Id. In this motion plaintiffs ask the Court to enter a revised scheduling order which adjusts

all deadlines which follow the close of fact discovery on July 1, 2005 by the same 60 day period.

4. Plaintiffs seek this relief on several grounds. First, in their motion seeking an extension for the close of fact discovery, plaintiffs specifically requested a corresponding adjustment of the subsequent litigation events:

> Plaintiffs respectfully request by this motion a limited extension . . . to complete fact discovery . . . together with a commensurate extension of the remaining deadlines set forth in the schedule by the same . . . period . . . .

Plaintiffs' March 15, 2005 motion for extension of discovery at p. 1, Exhibit B. Significantly, while defendants opposed the close of fact discovery, they never contended that even if the close of fact discovery were extended, the rest of the schedule should somehow be preserved intact.

5. Moreover, at oral argument this Court, in (reluctantly) granting plaintiffs' motion to extend fact discovery, clearly understood that it was not just the deadline for fact discovery but the entire case schedule which was being extended:

> I'm not happy about a second extension of the schedule. I assume that everybody acts in good faith when they come up with a proposed schedule and then a proposed extension.

Exhibit D, Tr. at 13, lines 6-9.

6. In addition, the adjustment of the dates for the remaining items on the schedule follows logically from the extension of the date for the close of fact discovery. In the July 21, 2004 Order the close of fact discovery is followed, 60 days later, by plaintiffs' disclosure of expert testimony. This 60 day hiatus between the close of discovery and the disclosure of expert testimony was agreed to by the parties, and approved by the Court, because an expert cannot usefully analyze and opine on record

evidence until discovery is closed. For example, an expert economist attempting to calculate the extent of damages allegedly sustained by plaintiffs can only make that calculation on the basis of a complete statistical record. A major part of the discovery effort currently being conducted by plaintiffs during the additional 60 day period allowed by the Court consists of efforts to obtain from defendants their computerized records of sales to plaintiffs, and to fully comprehend such electronic data after it is delivered. For example, in April 2005, plaintiffs served DuPont, Noranda and Falconbridge with Rule 30(b)(6) deposition notices seeking explanations of the electronic data which defendants had previously produced but which, in its current form, could not be understood. See Exhibit E, Notices of Rule 30(b)(6) depositions. Only when all of the requested data has been produced, and when plaintiffs' experts have access to all of the information necessary to decipher such data, can plaintiffs' expert economists fully evaluate and calculate the extent of damages allegedly sustained by class plaintiffs.

7. In sum, it is clear that all parties and the Court envisioned when the schedule of this litigation was initially created in July 2004 that the disclosure of expert testimony would be set for 60 days after the close of fact discovery. The Court clearly envisioned in granting the 60 day extension for the close of fact discovery that the entire schedule – and not just the date for the close of fact discovery – would be extended by 60 days. As a practical matter, the preparation and disclosure of expert testimony cannot be undertaken until fact disclosure is complete.

8. For the convenience of the court, a proposed order is attached as Exhibit F. This proposed order maintains the same litigation events, and the same timetable for such

events, as set forth in this Court's July 21, 2004 Order. The proposed order simply adjusts the schedule by 60 days.

WHEREFORE, for the reasons set forth herein, it is respectfully requested that the schedule issued by the Court on July 2004 be adjusted in its entirety by the same 60 day period granted by the Court pursuant to its March 21, 2005 Order.

Date: June 14, 2005

Respectfully submitted,

Mary Jane Edelstein Fait
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001

Steven O. Sidener
Joseph M. Barton
Karen D. Fineran
**GOLD BENNETT CERA & SIDENER LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Steven A. Asher
David H. Weinstein
Mindee J. Reuben
**WEINSTEIN KITCHENOFF & ASHER LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 545-7200
Facsimile: (215) 545-6535

***Plaintiffs' Co-Lead Counsel***

# EXHIBIT A

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| | | | |
|---|---|---|---|
| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
| **CASE NUMBER** | 03 C 4576 - MDL 1536 | **DATE** | 7/21/2004 |
| **CASE TITLE** | In Re: Sulfuric Acid Antitrust Litigation: This document relates to all related actions | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] All objections having resolved, The Plaintiffs' Motion for Entry of Amended Scheduling Order is Granted. New Defendants to answer or plead to the 2nd Consolidated Amended Complaint on or before 7/30/04. Fact discovery to close on 4/29/05. Experts to be disclosed on 6/30/04 by plaintiffs and the defendants to disclose on 9/2/05. Plaintiffs to disclose rebuttal experts by 11/4/05. Expert discovery to close on 12/16/05. Dispositive motions due on or before 2/1/06. See order regarding the taking/number of depositions. ENTER ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | JUL 22 2004 date docketed | 85 |
| | Notices mailed by judge's staff. | | JM docketing deputy initials | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| ✓ | Docketing to mail notices. | 2004 JUL 21 PM 3:50 | | |
| | Mail AO 450 form. | FILED-ED1 | | |
| | Copy to judge/magistrate judge. | | | |
| PAMF courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 2 2 2004

| | | |
|---|---|---|
| IN RE SULFURIC ACID ANTITRUST LITIGATION | : | MDL Docket No. 1536<br>Case No. 03 C 4576 |
| | : | Honorable Judge David H. Coar<br>Magistrate Judge Sidney I. Schenkier |
| This Document Relates To:<br><br>ALL RELATED ACTIONS | : | |

**ORDER**

This matter coming onto be heard on Plaintiffs' Motion for Entry of Amended Scheduling Order.

THIS COURT HEREBY ORDERS that the Scheduling Order entered by the Court on July 29, 2003 is amended, in relevant part, as follows:

1. New defendants, i.e., defendants named for the first time in the Second Consolidated Amended Complaint, to answer or plead to the Complaint on or before July 30, 2004;

2. Fact discovery ordered closed on April 29, 2005;

3. Plaintiffs shall disclose expert testimony pursuant to Rule 26(a)(2) on or before June 30, 2005;

4. Defendants shall disclose expert testimony pursuant to Rule 26(a)(2) on or before September 2, 2005;

5. Plaintiffs shall disclose any rebuttal expert testimony pursuant to Rule 26(a)(2)(c) on or before November 4, 2005;

6. Expert discovery ordered closed on December 16, 2005;

7. Dispositive motions are due on or before February 1, 2006; and

8. Plaintiffs are, in the first instance, limited to taking 35 full days of depositions which may be taken either as full day depositions or half day depositions [i.e., 25

5896

85

full day depositions plus 20 half day depositions equals 35 deposition days].The total number of witnesses, whether deposed for a full or half day, may not exceed 50. For good cause shown, Plaintiffs may seek leave of court to take additional depositions.

IT IS SO ORDERED.

BY THE COURT:

David H. Coar

HONORABLE DAVID H. COAR

July 21, 2004

# EXHIBIT B

RECEIVED

MAR 15 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re SULFURIC ACID ANTITRUST LITIGATION | MDL Docket No. 1536<br>Master File No. 03 C 4576 |
| This Document Relates To:<br><br>ALL ACTIONS | JURY TRIAL DEMANDED |

## PLAINTIFFS' MOTION FOR EXTENSION OF DISCOVERY

Plaintiffs, by and through their attorneys move for an extension of discovery, pursuant to Federal Rule of Civil Procedure 16 (b). In support, Plaintiffs state as follows:

This is an antitrust case, involving coordination by multiple defendants[1] of the shutdown or curtailment of sulfuric acid plants in various regions in the United States, and the subsequent creation of a joint venture between three of the major players in the sulfuric acid market, for the purpose of raising and stabilizing prices. On July 21, 2004, this Court set a deadline for completing fact discovery of April 29, 2005, and related deadlines following that date. (Ex. 1 of the accompanying Memorandum). The parties have diligently pursued discovery, as set forth in the accompanying Memorandum. Plaintiffs respectfully request by this motion a limited extension of 90 days to complete fact discovery, until July 30, 2005, together with a commensurate extension of the remaining deadlines set forth in the schedule by the same 90 day

[1] In addition to the original named defendants (Noranda, DuPont and Falconbridge) on May 11, 2004 the Plaintiffs filed their Second Amended Complaint adding Pressure Vessel Services, Inc. d/b/a PVS Chemicals; GAC Chemical Corporation; Intertrade Holdings, Inc.; Marsulex, Inc. ChemTrade Logistics; and Koch Industries as additionally named defendants.

period, and leave to take an additional 10 days of depositions if needed. The grounds are set forth in the accompanying memorandum.

Dated: March 14, 2005

Respectfully submitted,

Mary Jane Edelstein Fait
Adam J. Levitt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
656 West Randolph Street, Suite 500 West
Chicago, Illinois 60661
Telephone: (312) 466-9200
Facsimile: (312) 466-9292

Steven O. Sidener
Joseph M. Barton
Karen D. Fineran
**GOLD BENNETT CERA & SIDENER LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Steven A. Asher
Weinstein Kitchenoff & Asher LLC
Suite 1100
1845 Walnut St.
Philadelphia, PA 19103
Telephone: (215) 545-7200
***Plaintiffs' Co-Lead Counsel***

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 2.3**
**Eastern Division**

Ohio Chemical Services, et al.

Plaintiff,

v.

Case No.: 1:03–cv–04576
Hon. David H. Coar

E.I. du Pont de Nemours and Company, Inc., et al.

Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Monday, March 21, 2005:

MINUTE entry before Judge David H. Coar : Motion hearing held regarding documents #114 and 115.Plaintiff's Motion for extension of Discovery [114] is granted to the extent that discovery is extended only to July 1, 2005 and only 40 days of depositions. Discovery extended and ordered closed by July 1, 2005 – no further extensions will be allowed. Leave granted to take 40 days of depositions – no further extensions. Plaintiffs' Motion for Issuance of a Request for International Judical Assistance ( Letters Rogatory)to the Canadian Court [115] is granted. Mailed notice(pm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: SULFURIC ACID ANTITRUST LITIGATION | ) | MDL 1536 No. 03 C 4576 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) | Chicago, Illinois March 21, 2005 9:00 a.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DAVID H. COAR

APPEARANCES:

For the Plaintiffs:

WEINSTEIN KITCHENOFF & ASHER, LLC
1845 Walnut Street
Suite 1100
Philadelphia, Pennsylvania 19103
BY: MR. STEVEN A. ASHER

WOLF HALDSTEIN ADLER FREEMAN & HERZ LLC
656 West Randolph Street
Suite 500W
Chicago, Illinois 60661
BY: MS. MARY JANE FAIT
MR. THEODORE B. BELL

For the Defendants Noranda, Norfalco, and Falconbridge:

FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
BY: MR. DAVID C. GUSTMAN

TRACEY DANA McCULLOUGH, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 1420
Chicago, Illinois 60604
(312) 922-3716

APPEARANCES CONTINUED:

| | |
|---|---|
| For the Defendant duPont: | BALLARD, SPAHR ANDREWS & INGERSOLL, LLP<br>1735 Market Street<br>51st Floor<br>Philadelphia, PA 19103-7599<br>BY: MR. ERIC W. SITARCHUK |
| For the Defendant Intertrade: | CONNELLY ROBERTS & McGIVNEY<br>One North Franklin Street<br>Suite 1200<br>Chicago, Illinois 60606<br>BY: MR. WILLIAM E. SNYDER |
| For the Defendants Marsulex and ChemTrade: | WINSTON & STRAWN<br>33 West Wacker Drive<br>Suite 500<br>Chicago, Illinois 60606<br>BY: MR. R. MARK McCAREINS |
| For the Defendant Koch Industries: | HOWERY SIMON ARNOLD & WHITE, LLP<br>321 North Clark Street<br>Suite 3400<br>Chicago, Illinois 60610<br>BY: MR. TODD L. McLAWHORN |
| For the Defendant Vessel Systems: | SACHNOFF & WEAVER, LTD.<br>10 South Wacker Drive<br>40th Floor<br>Chicago, Illinois 60606<br>BY: MR. ADAM R. CHISS |

THE CLERK: 03 C 4576, In Re: Sulfuric Acid. There are two motions before the Court. Plaintiffs' motion for extension of time of discovery, motion for issuance of letters rogatory.

MR. ASHER: Good morning, Your Honor.

THE COURT: Good morning.

MR. ASHER: Steven Asher for plaintiffs.

MS. FAIT: Mary Jane Fait and Theo Bell as well for plaintiffs.

MR. BELL: Good morning, Your Honor.

MR. SNYDER: Good morning, Your Honor. William Snyder for the defendant Intertrade.

MR. GUSTMAN: Good morning, Your Honor. David Gustman on behalf of Noranda, Inc., Falconbridge Limited, and Norfalco, all the Noranda defendants.

MR. SITARCHUK: Good morning, Your Honor. Eric Sitarchuk for duPont.

MR. McCAREINS: Good morning, Your Honor. Mark McCareins on behalf of Marsulex and ChemTrade.

MR. McLAWHORN: Todd McLawhorn on behalf of Koch Industries.

MR. CHISS: Good morning, Your Honor.

THE COURT: Good morning.

MR. CHISS: Adam Chiss on behalf of Pressure Vessel Systems.

THE COURT: All right. Let's start with the motion for extension of time for discovery. Let's start with the scheduling order and the report of the Rule 26 conference.

Now, why does the plaintiff need an extension of time?

MR. ASHER: Your Honor, we need an extension of time -- when the last order went in in July, it gave us till the end of April of this year to conclude discovery.

THE COURT: Yes. Right.

MR. ASHER: Since that time we have looked through 2 and a half million pages of documents. We've had --

THE COURT: Let me stop you right there.

MR. ASHER: Yes.

THE COURT: The parties were ordered to meet and confer pursuant to Rule 26. I assume that that was a substantive meeting. Why in light of that substantive meeting -- I don't think that the number of pages that you looked through should have been any surprise to anybody. But in light of the schedule, the agreed schedule that was entered, why do you need more time?

MR. ASHER: We need more time because we have -- for a few reasons. Number one, we have a few more depositions to take.

THE COURT: Why couldn't that have been done within the framework set out in the original schedule?

MR. ASHER: We had to conclude the review of all of

these 2 and a half million documents, create a database, go through the database, determine which of the deponents --

THE COURT: You're telling me what you did.

MR. ASHER: Yes.

THE COURT: I'm trying to figure out why that wasn't foreseeable and taken into account in the original schedule.

MR. ASHER: At the time that we set the original schedule we did not know the full breadth -- the full amount of documents or when they would come in. Many of the documents were -- these were not produced in 30 days, Your Honor. These documents have been coming in through the entire period going back to July. Some of them have been coming in even as late as January of this year or more recently.

THE COURT: Okay.

MR. ASHER: So we have been dealing with a continuous production of documents, Your Honor.

THE COURT: Let me go back to the Rule 26 conference. At the Rule 26 conference the parties should have discussed what it was that they needed. To the extent that it was extensive information, then they should have gone back to their respective clients to find out what was involved. They should have reported to counsel, and there should have been a resumed Rule 26 conference.

But I don't understand why this was all not anticipatable, including the schedule of production of

documents and taken into account in the proposed schedule.

MR. ASHER: Your Honor --

THE COURT: That's what Rule 26 contemplates.

MR. ASHER: Your Honor, I believe that the defendants -- there are a few reasons. Number one, I believe the defendants did not fully know at that time -- or really some of them until recently the full extent of the volume of documents that would be produced, and we certainly did not know that.

We also -- there are a couple other issues. There are privilege issues. The Noranda defendants have designated thousands of pages of documents as privileged documents, which based on our review, you know, many of them don't seem to be privileged at all. So we now have to deal with the defendants in making sure that we get the balance of the documents that we're entitled to.

We've taken most of the depositions of the Noranda and the duPont defendants. We believe that most of the remaining depositions of the Noranda and the duPont defendants can be taken before the end of April, but we just need a very limited extension both of the time for taking discovery and the number of depositions to conclude our discovery in this very substantial case.

THE COURT: duPont has filed a written objection. Explain the objection.

MR. SITARCHUK: Your Honor, prior to the entry of the last amended scheduling order, we had produced the vast majority of our documents. We then waited until the fall for the plaintiff to start the depositions of our witnesses.

Prior to the last amended scheduling order, we had produced all of our electronic discovery. So this is production over a year ago, Your Honor. And we did not hear from the plaintiffs until a month or two ago with follow-up questions about the electronic discovery.

Your Honor, they have proceeded with our depositions unhindered. They could have started those depositions and proceeded unhindered far before then, but they chose not to. And it's our position, Your Honor, that they've just gotten their backs up against a wall, that they did not proceed with discovery as they should have, and that they should not now be coming back before this Court requesting an extension when all of this was known and foreseeable to them at that time they asked for the last extension.

Your Honor, when we first came before you, you said that you did not intend to preside over an epic. And we heartily agreed with that, and we spent a lot of time and energy and resources getting them a vast amount of information very early on in this case. And we think it's time for this case to move forward, Your Honor, on the current schedule.

THE COURT: What's the plaintiffs' response to that?

MR. ASHER: Your Honor, we have from the very beginning jumped into the review of documents in this case. While duPont produced many documents early, the Noranda defendants have been continuously producing documents right up until at least January of this year, and some are still coming in.

What is very significant, Your Honor, is that while duPont did make an early production, the most important duPont documents were in the Noranda production. And the reason is that the most important duPont documents were part of a joint venture between duPont and Noranda, and all of those documents when the joint venture ended went to Noranda, and we only got them as part of the Noranda production, which has continued through at least January of this year.

We were taking depositions, Your Honor, of duPont witnesses still not having had all of the duPont documents that Noranda was producing. We're not saying that Noranda was dilatory, because it was an enormous number. It was millions of pages of documents. So we didn't come before Your Honor, and say, Judge, require them to produce these documents in 30 days. I believe that Noranda in good faith -- because otherwise we would have come before Your Honor -- did produce the documents as soon as they could get their hands on them.

But the reality is that these documents and the most important duPont documents were not produced until -- and the

production wasn't concluded for the most part until January, and some documents are still coming in.

Nevertheless, we didn't wait until we had every piece of paper before we started taking depositions. The fact is, Your Honor, that nobody's been dilatory in this case. We've gone through every piece of paper that we've received from the defendants. We've had teams look at it immediately and create our databases. We've gone ahead with depositions as soon as we felt we had all of the documents which we needed in order -- or most of the documents in order to take the depositions.

Right now we have two things that we're most concerned about. One is electronic discovery. We have some electronic discovery which our experts cannot read. We're hoping that we get the cooperation of the defendants so that their computer experts talk to ours and assist us in making sense of them. If not, we may need to take some depositions of those witnesses as well.

Also we wanted to make sure that we -- and this is the last -- we wanted to make sure that we got as far as we could in terms of the depositions of Noranda and duPont before going into the additional defendants. As a result of that, we had very targeted discovery of the additional defendants, for the most part one or two witnesses for each of those companies, and we intend to take those in short order.

The reality is, Your Honor, that gauged by really any

other major nationwide 10- to 15-year antitrust case, this has been extremely efficient discovery, and we just need a very little amount of time to conclude the record.

THE COURT: What says Noranda?

MR. GUSTMAN: Your Honor, as you know, we also filed a written objection. I think Mr. Asher is somewhat confused on our document production. The documents that he indicated that he said were most important, those of the joint venture, I can advise the Court were the first group of documents that were produced in this case, and they were produced in the fall of '03. And like duPont, our document production was substantially completed in the fall of '04, and we advised them in December that we had produced all the documents --

MR. ASHER: December '04.

MR. GUSTMAN: December of '04. We advised them that we had produced all of the remaining documents. And he's right, there were about a million pages of documents that we produced, including electronic documents.

The privilege log issue and the privileged documents have been known to them for several months without any -- without any motion, although we're discussing that issue. But those privileged documents are small and relative in number to the almost million documents that the Noranda defendants have produced over a year and a half.

Probably something that should be brought out is the

fact that this is the second extension sought by the plaintiffs. The first extension would have had all of the fact discovery concluded on September 10th of '04. And they came in last July after knowing -- after adding all the other defendants and after knowing all the facts that they know now, requested until April 29th, '05 to produce -- for additional discovery, and the Court granted it.

In addition, and another issue that is important to their motion, they not only want more time, they want more deposition days. And that's a significant issue from the defendants' standpoint, Your Honor. The order -- your order said they got 35 days and 50 people. And they spent most of their time deposing the Noranda and duPont people. And only when I pointed it out to them in February that they had added another 27 days on top of what would have been 30, that the order would have been exceeded, did they start focusing in my opinion on the depositions that are most important.

So we oppose not only an extension, we think all this discovery can be completed by April 29th, about five weeks from now. But we strongly oppose any additional deposition days. They've taken about 18 and a half I believe or 19 and a half depending on the count. They have plenty of time within the 35 days to complete their discovery.

And I think as counsel for duPont indicated, it's time to move this case forward past the fact discovery stage and

stick with Your Honor's agreed scheduling order, the second amended -- the second extension, which was granted last July to the plaintiffs.

MR. ASHER: Your Honor, if I can just respond on the subject of the number of depositions. It is true we've only taken -- we've taken under 20 days of depositions. That's because following your Court's order we've been very careful about the number of depositions we take. We didn't want to waste any of them. So we're way below the number that Your Honor directed.

We have very carefully now that the document production's been concluded for the most part, we have enumerated the number of depositions that we believe we need. We believe we can come in at under 40. We've requested 45 only because of a concern that we may have to start taking a bunch of computer witnesses. But in terms of fact witnesses we believe that we can probably get in at under 40.

I think the language of Your Honor's order said that in the first instance we should take 35, for good cause we can come back. So we're really coming back for a very small number of additional depositions, which I think will wrap this thing up.

And I'll just make one other comment; that is, Mr. Gustman just confirmed in his last statement that Noranda told us in December of '04 that their document production was

concluded, and that was relatively recently, Your Honor. So that is long after this order was entered in July that the document production was concluded. And then only when it was concluded we were able to go through the processes to make sure we had them in our database and were able to use them.

THE COURT: Well, I'm not happy about a second extension of the schedule. I assume that everybody acts in good faith when they come up with a proposed schedule and then a proposed extension. And it's still not clear to me why this amount of time is necessary for discovery or the increased number of depositions.

But in an abundance of caution I'm going to extend the discovery cutoff till July 1st. There will be no further extensions. I'm going to increase the number of depositions to 40. There will be no further extensions.

MR. ASHER: Thank you.

THE COURT: This is it. This is it. So underline that, that there will be no extensions.

MR. ASHER: Thank you, Your Honor.

MR. GUSTMAN: Is that 40 days of deposition, Your Honor?

THE COURT: Yes. All right. Thank you very much.

MS. FAIT: Your Honor, we have one other matter.

THE COURT: Oh, the letters rogatory.

MS. FAIT: The letters rogatory.

THE COURT: Right.

MS. FAIT: Your Honor, we are asking for the Court to issue a letter of rogatory related to some -- a report that was prepared by Deloitte Touche Canada related to the defendants' pricing and profits. It's critical to our analysis of the evidence as well as damages. We believe the Court has authority under -- statutory and case law authority to issue the letter.

We have requested the documents from Canadian Deloitte Touche, but they have not responded to our requests. And we -- there's also some case law where actually Deloitte Touche Canada was involved in a class action in which they requested that letters rogatory be issued rather than producing them by subpoena, so we think this is the appropriate method to get the documents related to this critical report, which have not been produced by any other party.

THE COURT: The motion will be granted.

MS. FAIT: Thank you, Your Honor.

CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true, correct and complete transcript of the proceedings had at the hearing of the aforementioned cause on the day and date hereof.

Tracy D. McCullough 2/6/05

Official Court Reporter
United States District Court
Northern District of Illinois
Eastern Division

Date

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re SULFURIC ACID ANTITRUST LITIGATION | ) ) ) ) | MDL Docket No. 1536<br>Master File No. 03 C 4576 |
| This Document Relates To:<br><br>ALL ACTIONS | ) ) ) ) | JURY TRIAL DEMANDED |

**NOTICE OF RULE 30(b)(6) DEPOSITION OF NORANDA AND FALCONBRIDGE**

Please take notice that plaintiffs will take the deposition, pursuant to F.R.Civ.P. 30(b)(6), of Noranda and Falconbridge, commencing Thursday, April 21, 2005, of the Noranda and Falconbridge employees knowledgeable on each of the following subjects. The depositions will continue from day to day until completed:

1. An explanation of the data sources used for the CD's of electronic data provided by Noranda and Falconbridge to plaintiffs;

2. An explanation of how each field in those CD's was calculated and computed, and what each field means and a description of each code used;

3. An explanation of retention date for the above data;

4. An explanation of whether hard copy invoice data exists for years for which electronic data is no longer available;

5. An explanation of whether the electronic data referenced in the attached letter (Ex. 1 hereto) has been provided to plaintiffs;

6. An explanation of the subjects attached as Ex. 2 hereto.

Dated: April 6, 2005

Mary Jane Fait (by Robert Sherman)

Mary Jane Edelstein Fait
Adam J. Levitt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
656 West Randolph Street, Suite 500 West
Chicago, Illinois 60661
Telephone: (312) 466-9200
Facsimile: (312) 466-9292

Steven O. Sidener
Joseph M. Barton
Karen D. Fineran
**GOLD BENNETT CERA & SIDENER LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Steven A. Asher
Mindee Reuben
**FOX ROTHSCHILD LLP**
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Facsimile: (215) 299-2150

*Plaintiffs' Co-Lead Counsel*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re SULFURIC ACID ANTITRUST LITIGATION | ) | MDL Docket No. 1536<br>Master File No. 03 C 4576 |
| This Document Relates To:<br><br>ALL ACTIONS | ) | JURY TRIAL DEMANDED |

**NOTICE OF RULE 30(b)(6) DEPOSITION OF DUPONT**

Please take notice that plaintiffs will take the deposition, pursuant to F.R.Civ.P. 30(b)(6), of DuPont, commencing Thursday, April 21, 2005, on the following subjects:

1. An explanation of the data sources used for the CD's of electronic data provided by DuPont to plaintiffs;

2. An explanation of how each field in those CD's was calculated and computed, and what each field means and a description of each code used;

3. An explanation of retention date for the above data;

4. An explanation of whether hard copy invoice data exists for years for which electronic data is no longer available;

5. An explanation of how the following data relating to non-fuming sulfuric acid for the years 1990 through 2002 was compiled and retained by DuPont in the normal course of business; and the extent to which it has been provided to plaintiffs in electronic or hard copy form:



b)_1

04/06/2005 15:53 FAX 215 238 1968 KOHN SWIFT ☑011/035

a. prices charged to each customer;

b. sales to each customer, including quarterly or monthly reports;

c. costs of production by plant, including monthly or quarterly reports;

d. freight charges from suppliers and freight charges to customers;

e. reconciliations with Noranda and Falconbridge and NorFalco and Noranda DuPont LLC;

6. An explanation of how data was retained pursuant to the attached document NFD 002999-3018 (Ex. 1 hereto) and the extent to which it has been provided to plaintiffs in electronic form;

7. An explanation of the extent to which data on spent regeneration acid has been intermixed with data on non-fuming sulfuric acid in any production of data to plaintiffs;

8. Fixed fees paid by the LLC to DuPont.

Dated: April 6, 2005

Mary Jane Edelstein Fait
Adam J. Levitt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
656 West Randolph Street, Suite 500 West
Chicago, Illinois 60661
Telephone: (312) 466-9200
Facsimile: (312) 466-9292

Steven O. Sidener
Joseph M. Barton
Karen D. Fineran
**GOLD BENNETT CERA & SIDENER LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Steven A. Asher
Mindee Reuben
**FOX ROTHSCHILD LLP**
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Facsimile: (215) 299-2150

***Plaintiffs' Co-Lead Counsel***



b)_1

ɔɛo/ɛıo 🄱 ıɹʇɐs uɥoʞ 8961 8ɛ2 SI2 XVℲ 9S:SI S002/90/90

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE SULFURIC ACID ANTITRUST LITIGATION** | : | **MDL Docket No. 1536** **Case No. 03 C 4576** |
| **This Document Relates To:** | : | **Honorable Judge David H. Coar** **Magistrate Judge Jeffrey Cole** |
| **ALL RELATED ACTIONS** | : | |

**ORDER**

THIS COURT HEREBY ORDERS that the Order entered by this Court on July 21, 2004 is clarified, in relevant part, as follows:

1. Fact discovery ordered closed on July 1, 2005;
2. Plaintiffs shall disclose expert testimony pursuant to Rule 26(a)(2) on or before August 29, 2005;
3. Defendants shall disclose expert testimony pursuant to Rule 26(a)(2) on or before November 1, 2005;
4. Plaintiffs shall disclose any rebuttal expert testimony pursuant to Rule 26(a)(2)(c) on or before January 3, 2006;
5. Expert discovery ordered closed on February 14, 2006; and
6. Dispositive motions are due on or before April 3, 2006.

IT IS SO ORDERED.

BY THE COURT:

____________________________
HONORABLE DAVID H. COAR

DATE:__________

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 2.4**
**Eastern Division**

Sulfuric Acid Antitrust Litigation, et al.

Plaintiff,

v.

Case No.: 1:03–cv–04576
Hon. David H. Coar

E.I. du Pont de Nemours and Company, Inc., et al.

Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, June 20, 2005:

MINUTE entry before Judge David H. Coar : Motion hearing held on 6/20/2005 regarding motion for miscellaneous relief [138]. Plaintiffs' Motion for entry of revised scheduling order [138] is granted. Plaintiffs' expert disclosure by 8/29/2005. Defendants' expert disclosure by 11/1/2005. Expert Discovery ordered closed by 2/14/2006. Dispositive Motins due by 4/3/2006.No notice – advised in open court.(pm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT D

RECEIVED

AUG 18 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE SULFURIC ACID ANTITRUST LITIGATION | MDL Docket No. 1536<br>Case No. 03 C 4576 |
| This Document Relates To:<br><br>ALL RELATED ACTIONS | Honorable Judge David H. Coar<br>Magistrate Judge Jeffrey Cole |

**PLAINTIFFS' MOTION TO REQUIRE DEFENDANTS TO SUPPLY AND EXPLAIN TRANSACTION DATA AND TO PERMIT PLAINTIFFS' EXPERT THIRTY (30) DAYS THEREFROM TO FURNISH REPORT**

Plaintiffs, by their attorneys, hereby move this Court to require Defendants to supply and to explain transaction data and to permit Plaintiffs' expert thirty (30) days therefrom to furnish report, in conformance with the Proposed Order attached as Exhibit A. In further support hereof, Plaintiffs submit the attached memorandum of law.

WHEREFORE, Plaintiffs respectively request that this Court enter the attached Proposed Order requiring Defendant to supply and to explain transaction data and to permit Plaintiffs' expert thirty (30) days from receipt of the data and answers to his questions to complete his expert report.

Dated: August 18, 2005

[signature]

Mary Jane Edelstein Fait
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001

8350

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE SULFURIC ACID ANTITRUST LITIGATION | MDL Docket No. 1536<br>Case No. 03 C 4576 |
| This Document Relates To:<br><br>ALL RELATED ACTIONS | Honorable Judge David H. Coar<br>Magistrate Judge Jeffrey Cole |

**[PROPOSED] ORDER**

This matter coming on to be heard on Plaintiffs' Motion to Require Defendants to Supply and Explain Transaction Data and To Permit Plaintiffs' Expert Thirty (30) Days Therefrom to Furnish Report, the parties having been heard and the Court being advised in the premises,

**IT IS HEREBY ORDERED THAT:**

(1) Each Defendant shall certify, on or before September 8, 2005, that all electronic transaction sales data in its possession or control have been provided to Plaintiffs;

(2) Each Defendant, on or before September 23, 2005, shall answer questions posed by Plaintiffs' expert necessary to interpret its data;

(3) Defendants Noranda and Falconbridge, on or before September 8, 2005, will provide sales pricing data as received from other defendants ("reconciliation information"); and

(4) Plaintiffs' expert shall file his damage report on or before October 24, 2005.

HONORABLE DAVID H. COAR

8352

Aug-18-05 02:48pm From- T-595 P.003/030 F-181

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
AUG 18 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| IN RE SULFURIC ACID ANTITRUST LITIGATION | MDL Docket No. 1536<br>Case No. 03 C 4576 |
| This Document Relates To:<br><br>ALL RELATED ACTIONS | Honorable Judge David H. Coar<br>Magistrate Judge Jeffrey Cole |

**NOTICE OF MOTION**

To: To all Counsel of Attached Service List

**PLEASE TAKE NOTICE** that the undersigned shall appear before the Honorable Judge David H. Coar in Room 1478 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, on August 24, 2005 at 9:00 a.m., or as soon thereafter as counsel may be heard and then and there present **Plaintiffs' Motion To Require Defendants To Supply And To Explain Transaction Data and To Permit Plaintiffs' Expert Thirty (30) Days Therefrom To Furnish Report**, a copy of which is hereby served upon you.

Dated: August 18, 2005

Respectfully Submitted,

[signature]

Mary Jane Edelstein Fait
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001

8349

Steven O. Sidener
Joseph M. Barton
Karen D. Fineran
**GOLD BENNETT CERA**
**& SIDENER LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Steven A. Asher
David H. Weinstein
Mindee J. Reuben
**WEINSTEIN KITCHENOFF &**
**ASHER, LLC**
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
Telephone: (215) 545-7200
Facsimile: (215) 545-6535

***Plaintiffs' Co-Lead Counsel***

Aug-18-05 02:49pm From- T-595 P.005/030 F-161

RECEIVED
AUG 18 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE SULFURIC ACID ANTITRUST LITIGATION** | **MDL Docket No. 1536** <br> **Case No. 03 C 4576** |
| This Document Relates To: <br> ALL RELATED ACTIONS | **Honorable Judge David H. Coar** <br> **Magistrate Judge Jeffrey Cole** |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of August, 2005, copies of the **Plaintiff's Notice of Motion, Motion To Require Defendants To Supply And To Explain Transaction Data and To Permit Plaintiffs' Expert Thirty (30) Days Therefrom To Furnish Report, a Memorandum of Law in support of this Motion, and a Notice of Filing of Appendix to Memorandum of Law Under Seal,** were served by causing true and correct copies of same to be delivered via Federal Express and fax to the attached Service List.

Dated: August 18, 2005

Mary Jane Fait

Mary Jane Edelstein Fait

**In Re Sulfuric Acid Antitrust Litigation; MDL No. 1536, Master File No. 03 C 4576**

**VIA FAX AND FEDERAL EXPRESS**

**FREEBORN & PETERS**
David C. Gustman
Jeffrey M. Cross
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000
**Counsel for Defendants Falconbridge, Ltd., Noranda, Inc., and Norfalco LLC**

**SANCHEZ & DANIELS**
Edward M. Ordonez
Hugo Chaviano
333 West Wacker Drive, Suite 500
Chicago, Illinois 60606
Telephone: (312) 641-1555
**Counsel for Defendants E.I. DuPont de Nemours and Company, Inc. and Norfalco, LLC**

**HOWREY SIMON ARNOLD & WHITE, LLP**
Joel C. Chefitz
Todd L. McLawhorn
321 North Clark Street, Suite 3400
Chicago, Illinois 60610
Telephone: (312) 595-1239
**Counsel for Defendant Koch Industries, Inc.**

**WINSTON & STRAWN LLP**
R. Mark McCareins
35 West Wacker Drive, 41st Floor
Chicago, Illinois 60601
Telephone: (312) 558-5600
**Counsel for Defendants Marsulex, Inc. and ChemTrade**

**CONNELLY, ROBERTS & McGIVNEY, LLC**
Michael P. Connelly
William E. Snyder
Cory D. Anderson
One North Franklin, Suite 1200
Chicago, Illinois 60606
Telephone: (312) 251-9600
**Counsel for Defendant Intertrade Holdings, Inc.**

**SACHNOFF & WEAVER, LTD.**
Michael H. Cramer
Michael D. Richman
Adam R. Chiss
30 South Wacker Drive, Suite 2900
Chicago, Illinois 60606
Telephone: (312) 207-6505
**Counsel for Defendant Pressure Vessel Services, Inc.**

**VERILL & DANA, LLP**
James T. Kilbreth
One Portland Square
P.O. Box 586
Portland, Maine 04112-0586
Telephone: (207) 774-4000
**Counsel for Defendant GAC Chemical Corporation**

**DICKINSON WRIGHT PLLC**
Edward H. Pappas
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, Michigan 48304-2970
Telephone: (248) 433-7200
**Counsel for Defendant PVS Chemicals, Inc.**

**DICKINSON WRIGHT PLLC**
K. Scott Hamilton
500 Woodward Avenue
Suite 4000
Detroit, MI 48226-3425
Telephone: (313) 223-3636
**Counsel for Defendant**
**PVS Chemicals, Inc.**

**KOHN, SWIFT & GRAF, P.C.**
Joseph C. Kohn
William E. Hoese
Diana Liberto
One South Broas Street, Suite 2100
Philadelphia, Pennsylvania 19107
Telephone: (215) 238-1700

**WEINSTEIN KITCHENOFF & ASHER, LLC**
Steven A. Asher
Mindee Reuben
1845 Walnut Street
Suite 1100
Philadelphia, Pennsylvania 19103
Telephone: (215) 545-7200

**GOLD BENNETT CERA & SIDENER LLP**
Steven O. Sidener
Joseph M. Barton
Karen D. Fineran
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230

VIA U.S. REGULAR MAIL

**ROSS, DIXON & BELL, LLP**
Michael G. Bruton
Christopher Ellis
Three First National Plaza
70 West Madison, Suite 525
Chicago, Illinois 60602
Telephone: (312) 759-1920

**LAW OFFICES OF ROBERT K. WHITT**
Robert K. Whitt
330 North A
Building 2, Suite 101
Midland, Texas 79705
Telephone: (915) 686-2000

**LEVIN, FISHBEIN, SEDRAN & BERMAN**
Howard Sedran
510 Walnut Street
Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500

**SAVERI & SAVERI, INC.**
Guido Saveri
R. Alexander Saveri
Geoffrey C. Rushing
Cadio Zirpoli
111 Pine Street, Suite 1700
San Francisco, California 94111
Telephone: (415) 217-6810

**LAW OFFICES OF RANDY R. RENICK**
Randy R. Renick
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9608

**MALKINSON & HALPERN**
John R. Malkinson
223 West Jackson Boulevard, Suite 1010
Chicago, Illinois 60606
Telephone: (312) 427-9600

**MAGER WHITE & GOLDSTEIN, LLP**
Ann D. White
One Pitcairn Place
165 Township Line Road, Suite 2400
Jenkintown, Pennsylvania 19046
Telephone: (215) 481-0273

**KEATING MUETHING & KLEKAMP, LLP**
Richard L. Creighton, Jr.
Joseph M. Callow, Jr.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 579-6400

**BOLOGNESE & ASSOCIATES, LLC**
Anthony J. Bolognese
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, Pennsylvania 19103
Telephone: (215) 814-6750

**PRETI FLAHERTY LLC**
Gregory P. Hansel
One City Center
P.O. Box 9546
Portland, Maine 04112-9546
Telephone: (207) 791-3000

# EXHIBIT E

Aug-18-05 02:50pm From- T-595 P.012/030 F-161

RECEIVED
AUG 18 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE SULFURIC ACID ANTITRUST LITIGATION | MDL Docket No. 1536<br>Case No. 03 C 4576 |
| This Document Relates To:<br><br>ALL RELATED ACTIONS | Honorable Judge David H. Coar<br>Magistrate Judge Jeffrey Cole |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REQUIRE DEFENDANTS TO SUPPLY AND EXPLAIN TRANSACTION DATA AND TO PERMIT PLAINTIFFS' EXPERT THIRTY (30) DAYS THEREFROM TO FURNISH REPORT**

## I. INTRODUCTION

This lawsuit concerns the raising and stabilizing of prices of sulfuric acid sold by defendants to customers in the United States. Prices of sulfuric acid sold by defendants to U.S. customers are at the heart of plaintiffs' damage report. Plaintiffs requested each defendant to provide its respective transaction sales data to class members to enable plaintiffs' expert, Dr. James McClave, to analyze the data to prepare an expert report.

A number of defendants have not furnished the electronic databases of statistical data (sales transactions to class members) necessary to enable plaintiffs' expert to complete his damage report. The expert report is due August 29, 2005. Defendants appear to be deliberately withholding data to frustrate the report.

Defendants have erected numerous roadblocks to prevent the timely preparation of plaintiffs' expert damage report. For example, defendant Koch claimed for 9 months that it did not believe that it had any electronic records of sales transactions. Then, on July 26, 2005, slightly more that one month before plaintiffs' expert damage report was due, Koch suddenly produced electronic transaction files for 110,000 sales transactions. Moreover, Koch provided no explanation which is necessary for the plaintiffs to interpret this data. When plaintiffs sent Koch the list of questions that Dr. McClave needed to have answered, and asked Koch to provide

a knowledgeable person to explain the data, Koch replied on August 11, 2005, that it had no legal obligation to do so (but might try to find someone at an unspecified date in the future).

Another roadblock was defendant GAC's insistence that plaintiffs pre-pay GAC to have its data restored from back-up tapes, promising the data promptly. GAC's data has still not been furnished, despite both plaintiffs repeatedly inquiries and payment. In fact, GAC's counsel recently responded that GAC has forbidden its own counsel to contact the vendor doing the restoration to learn when (if ever) GAC plans to supply the data.

Defendant PVS was served with plaintiffs' production requests seeking electronic transaction data in September 2004 and March 2005. On June 20, 2005, Magistrate Cole granted plaintiffs' motion to compel PVS' compliance with plaintiffs' outstanding discovery requests. See Court's Docket Sheet at No. 152. To date, PVS has not produced any electronic transaction data to the plaintiffs. However, on August 17, 2005, counsel for PVS confirmed that PVS does indeed have responsive electronic transaction data, but needs 10 to 14 more days to compile the data for production. PVS' proposed production of electronic data, whether deliberate or not, happens to coincide with the current due date of plaintiffs' expert report.

Defendant Noranda received periodic monthly or quarterly information about the customer prices at which other defendants sold Noranda and Falconbridge acid in the U.S. ("reconciliation data"). This data will help determine damages incurred by class members in this case. Noranda promised to provide an employee to explain to Dr. McClave where this data is located on its electronic databases. Despite repeated requests, Noranda has not yet done so.

It is patently unfair and improper for defendants to play "hide the ball" with their electronic data in order to force plaintiffs to file a report prematurely—i.e. one that does not utilize all data that is available. As set forth below, defendants have a legal obligation to produce understandable data and improperly have failed to do so. Based on the defendants' conduct, which is set forth in more detail below, plaintiffs seek a ruling from this Honorable Court: (1) requiring each defendant to certify, within 15 days, that all electronic transaction sales data in its possession or control have been provided to plaintiffs; (2) requiring each defendant, within 15 days after furnishing such data, to answer questions posed by Dr. McClave necessary to interpret this data; (3) requiring Noranda and Falconbridge, within 15 days, to provide or identify the

sales pricing data it received from other defendants (i.e., reconciliation data); and (4) permitting Dr. McClave 30 days from receipt of the data and answers to complete his expert report.[1]

## II. DEFENDANTS ARE LEGALLY OBLIGATED TO PRODUCE UNDERSTANDABLE SALES DATA

Electronically-stored pricing data are highly relevant, because the data reflects actual prices charged to customers. Each time a defendant made a sale of sulfuric acid, the defendant entered the transaction into its accounting software. The data typically include the prices at which the sulfuric acid was sold, the quantity sold, the freight charged, where the acid was made and shipped from, the location of the buyer, and so forth. (The DuPont electronic database, for example, contains over 200 separate fields, codes and columns for each transaction). These daily transactions, entered into the accounting software, are used by defendants internally to generate, for example, monthly, quarterly, and yearly sales and revenue reports. Plaintiffs' expert requires this electronic sales transaction data to prepare his report. Ex. 1.

It is the defendants' duty to produce this electronically-stored pricing data in a way that can be understood. The 1970 Amendment to F.R.Civ.P. 34 (a)(1) provides explicitly that "data compilations" must be "**translated, if necessary, by the respondent into reasonably usable form**" (Emphasis supplied). The Advisory Notes explain: "when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required **to use his devices to translate the data into usable form.**" (Emphasis supplied). As noted 20 years ago:

> Indeed, some courts have required the responding parties to develop programs to extract the requested information and to assist the requesting party in reading and interpreting information stored on computer tape. *See, e.g., National Union Electric Corp. v. Matsushita Electric Industrial Co.*, 494 F. Supp. 1257 (E.D. Pa. 1980). Depending on the type of case, a Court might even permit discovery of computer capabilities and capacities. See *Dunn v. Midwestern Indemnity*, 88 F.R.D. 191 (S.D. Ohio 1980). The Federal Judicial Center has recognized the challenge presented to discovery processes in the computer age:
> In many instances it will be essential for the discovering party to know the underlying theory and the procedures employed in

[1] A proposed Order is attached to Plaintiffs' Motion.

> preparing and storing the machine-readable records. When this is true, litigants should be allowed to discover any material relating to the record holder's computer hardware, the programming techniques employed in connection with the relevant data, the principles governing the structure of the stored data, and the operation of the data processing system. When statistical analyses have been developed from more traditional records with the assistance of computer techniques, the underlying data used to compose the statistical computer input, the methods used to select, categorize, and evaluate the data for analysis, and all of the computer outputs normally are proper subjects for discovery.
> *Manual for Complex Litigation* para. 2.715, at 75 (1977).

*Bills v. Kennecott Corporation*, 108 F.R.D. 459, 461 (D.C. Utah 1985).

Defendants are also required to provide both written documentation about the software codes and fields they have elected to use in these electronic databases, and supplemental oral explanations as questions arise. As the *Reference Manual for Scientific Evidence*, published by the Federal Judicial Center, states:

> 2. A party that offers data to be used in statistical work....should be encouraged to provide the following to the other parties: (a) a hard copy of the data when available and manageable in size, along with the underlying sources; (b) computer disks or tapes on which the data are recorded; (c) complete documentation of the disks or tapes; (d) computer programs that were used to generate the data (in hard copy, on a computer disk or tape, or both); and (e) documentation of such computer programs.
>
> 3. The party offering data should make available the personnel involved in the compilation of such data to answer the other parties' technical questions concerning the data and the methods of collection or compilation.

*Reference Manual*, pp. 441-442 (Federal Judicial Center, 1994) (See relevant pages attached at Ex. 2).

It is well settled that a litigant cannot be permitted to benefit from its own improper litigation behavior. *See e.g. Monumental Life Ins. Co. v. Lyons-Neder*, 140 F. Supp. 2d 1265, 1269 (M.D. Ala. 2001); *Pitcher v. Research Products Co.*, 1995 U.S. Dist. LEXIS 17215, *2 (E.D. La. Nov. 14, 1995); *United States v. Franke*, 1994 U.S. Dist. LEXIS 2235, *14 (D. Kan. Feb. 15, 1994). Deliberate tactical intransigence by a party in discovery is not tolerated by the

courts and can result in sanctions ranging from fees and costs, to striking witnesses, to default judgment. *See e.g. Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 147 (N.D. Ill. 1982); *Bratka v. Anheuser-Busch Company, Inc.*, 164 F.R.D. 448, 462 (S.D. Oh. 1995); *Flores Cruz v. Avon Products, Inc.*, 693 F. Supp. 1314, 1320 (D.P.R. 1988).

For example, in *Fautek*, (96 F.R.P. 141) a class action involving sexual discrimination, plaintiffs sought certain personnel records in computer readable form. Defendant first responded that only minimal information was in computer readable format and none of it was responsive to the request. Plaintiffs then took a variety of steps in order to obtain the requested information from defendants' litigation database. Plaintiffs discovered that the personnel records were indeed computerized and the computer records were then produced.

Plaintiffs' experts began working on the computerized material and discovered that certain data were coded, and that the defendant had not provided the code books. Defendant claimed that there were no code books but provided an attachment which purportedly explained the meaning of the codes. When plaintiffs' experts were still unable to decipher the codes, further investigation by plaintiffs revealed that code books did indeed exist. The Court sanctioned defendant for its failure to provide complete, accurate and timely responses to plaintiffs' requests by requiring defendant to pay plaintiffs' costs and allowing plaintiffs to file a petition for attorneys' fees.

In *Bratka v. Anheuser-Busch Company, Inc.*, 164 F.R.D. 448 (S.D. Oh. 1995), the Court concluded that the defendant had "effectively stalled discovery for over a year" and initially awarded fees and costs to plaintiff's counsel. *Id.* at 452. Plaintiff subsequently sought certain medical literature relevant to his personal injury claim from the defendant which was not produced. Thereafter, defendant filed a motion for summary judgment supported by an affidavit by a physician who stated that he was unable to find any medical literature relevant to the personal injury claimed by the plaintiff. An anonymous call tipped plaintiff off to the fact that such information did indeed exist in defendant's files and that it had not been produced. Finding that defendant had "unreasonably obstructed, complicated and delayed discovery from the very beginning of [the] litigation," *id.* at 462, the Court entered a default judgment in favor of plaintiff on the issue of liability as sanctions for defendant's deliberate tactical intransigence, *id.* at 463.

*See also Flores Cruz*, 693 F. Supp. at 1320 (court properly struck defendants' witnesses where they failed to disclose witnesses until too late for plaintiff to depose them).

In this case, plaintiffs do not seek sanctions (at least not at this juncture). Instead, plaintiffs simply want Dr. McClave to receive, and analyze defendants' data in order to complete his expert report.

## III. DEFENDANTS HAVE FAILED TO PRODUCE THE DATA AND INFORMATION NECESSARY FOR PLAINTIFFS' EXPERT TO PREPARE HIS REPORT

In the present case, defendants have not provided the data and/or accompanying explanations of that data in a timely manner. Despite hundreds of hours expended by plaintiffs' data experts, very basic information has yet to be provided to enable them to complete the job.

Following is a more detailed defendant-by-defendant description of efforts made by plaintiffs to secure this data. This description is supported by a declaration from plaintiffs' data expert, Dr. McClave, summarizing why tasks cannot be completed unless and until defendants provide the necessary information. Ex. 1.

### A. Defendant Koch

Plaintiffs served Koch with requests for production of its pricing data on September 15, 2004, shortly after Koch was added to the lawsuit. Ex. 3, Nos. 2, 9, 13. Koch lodged objections, but claimed it would produce responsive documents. Ex. 4. When Koch provided no electronic sales data, plaintiffs served a supplemental, more targeted request for this data on March 11, 2005. Ex. 5, No. 2. Koch again objected, claiming it had produced everything it had (which was incorrect). Koch also stated it would continue to search. Ex. 6, No. 2.[2]

Koch's counsel repeatedly stated his belief that Koch had no electronic transaction data, because it had sold its sulfuric acid plants several years earlier. Plaintiffs persisted. Finally, on May 24, 2005, a Koch paralegal sent, with no explanation of any kind, a computer disk, claiming

[2] Koch simply produced hundreds of thousands of paper copies of bills of lading, invoices, etc. The paper copies for transactions involve hundreds of thousands of pieces of paper; they are not arranged consecutively; and there is no guarantee whether all or part of the invoice transactions are present. For Dr. McClave and his staff to try to "reinvent the wheel"—take the hundreds of thousands of pages of paper copies, and key-punch in all the data, in effect re-create a defendants' accounting software system—would take many years of work, and millions of dollars.

it contained "Koch's electronic data." Ex. 7. (Pertinent correspondence with Koch's counsel is collected at Ex. 7, in chronological order). This disk contained approximately 1,700 files which could not be interpreted or understood. On June 9, 2005, plaintiffs asked Koch to explain how the files were compiled and to describe them. Koch responded on June 15, 2005 that it could not provide any indices or explanations for these files. They were apparently just random files that were found, loaded onto a disk, and sent to plaintiffs. Dr. McClave's analysis showed them to be "fragmented bits of information" with no individual sales transactions. Ex. 1, ¶14.

Because the electronic data in the form produced was essentially useless to the expert, plaintiffs continued to seek information and explanations from Koch. In late June, Koch claimed that four boxes of financial documents "might" contain the sales information plaintiffs needed. Plaintiffs obtained and examined them, but they did not contain any sales transactions (and were almost exclusively for the 1991-1994 time period). On July 7, 2005, plaintiffs reiterated that the electronic files provided in late May were "random and isolated bits and pieces of files," and again requested to speak with a knowledgeable Koch person.

Finally, on July 11, 2005, Koch stated it had "some electronic transaction data" from 1995 to 2002. Koch stated it would be provided "by the end of this week", i.e. July 15th. Plaintiff followed up on July 18th, but Koch did not send the data until July 26, 2005 (received July 27, 2005), weeks after the July 1, 2005 discovery cut-off date.

The disk that Koch furnished appears to contain **nearly 110,000 unidentified sales transactions**, for the period from 1991 to 2002. No explanation of any kind arrived with the data, explaining what any of the codes or fields meant.

On July 28, 2005, plaintiffs asked Koch to provide someone to explain how the data was compiled and to answer technical questions about it. Koch replied on August 2, 2005 that "the relevant in-house personnel have been out of the office." (Koch has not explained why these "relevant in-house personnel" could not locate and supply this data during the prior year). Koch's counsel then requested that plaintiffs' questions be provided in writing. Dr. McClave's staff formulated questions, and those were provided to Koch on August 9, 2005. On August 11, 2005, Koch surprisingly stated that it had no obligation to answer any of these questions, and that it might (or might not) provide someone to explain the data, with no timetable.

Hence, even though plaintiffs have sought this data for nearly a year, Koch only provided it three weeks ago (after stating for nine months that it did not exist), and has not yet explained the technical questions plaintiffs' expert needs answered before he and his staff can use this data.

**B. Defendant GAC Chemical**

Defendant GAC was served with the same requests to produce electronic data as Koch, in September, 2004 and March, 2005. Exs. 3 and 5. GAC objected to providing any responsive documents, on the grounds that GAC's motion to dismiss was pending and that GAC should not provide discovery until that motion is adjudicated. Exs. 8 and 9. This categorical refusal is the subject of a motion to compel currently pending before Magistrate Judge Cole.

As to its electronic databases, notwithstanding its general objections, GAC agreed to provide them, however insisting that plaintiffs defray the costs. GAC's counsel claimed that GAC had stored the transaction data on back-up tapes with a vendor that used proprietary software codes that only the vendor understood. GAC demanded that plaintiffs pay the cost of the restoration. Plaintiffs, to move this along, agreed to pay ½ the costs. (The relevant correspondence is collected at Ex. 10). GAC then stalled some more, and claimed the vendor needed partial pre-payment before beginning the work. Plaintiffs again agreed, and immediately sent the money. Plaintiffs also sought the assurance that GAC would provide this data no later than the end of July, 2005.

To date, no transaction data of any kind has been furnished. Plaintiffs have followed up with GAC's counsel, both orally and in writing, and GAC's counsel only response is that GAC has forbidden its own counsel to contact the vendor directly.

**C. Defendant PVS**

PVS was served with the same production requests seeking electronic data as were GAC and Koch, in September, 2004 and March, 2005. Exs. 3 and 5. PVS failed to respond to either document request. When plaintiffs' follow-up efforts to obtain discovery from PVS met with no response, Magistrate Judge Cole granted plaintiffs' motion to compel and ordered PVS to fully comply with plaintiffs' discovery. See Court Docket at Nos. 141, 152.

PVS has failed to provide any electronic sales data to date. However, on July 25, 2005, PVS supplemented its production with PVS' written response to the Department of Justice's

("DOJ") subpoena duces tecum dated September 16, 1999. Ex. 11. In those responses (Ex. 11, pp. 437-438), PVS disclosed to the DOJ that electronic sales transaction data existed on PVS' computers and that PVS had utilized that data in part in responding to the DOJ's subpoena. On August 9th, 2005, Plaintiffs sent PVS a correspondence seeking the immediate production of the electronic data referenced in PVS' written response to the DOJ's subpoena. Ex. 12. On August 17, 2005, and in response to plaintiffs' August 9th letter, counsel for plaintiffs and PVS further discussed PVS' electronic data as well as other discovery issues. Counsel for PVS indicated that he had not produced any electronic data to date because PVS is still compiling the data. PVS' counsel further represented that PVS would produce responsive electronic data in 10 to 14 days. At best, this would leave plaintiffs' expert with a mere day or two to review, interpret, analyze and incorporate his findings from PVS' data into his damage report, assuming the electronic data PVS produces is in a form that can readily be used by plaintiffs' expert.

**D. Defendants Noranda and Falconbridge**

Defendants Noranda and Falconbridge provided acid to other defendants (DuPont, Koch, GAC, PVS, Marsulex) for resale in the U.S. Except in rare instances, the Noranda/Falconbridge database does not reflect final prices to retail customers (class members) in the U.S.

Noranda and Falconbridge do, however, possess significant information in their files about the retail prices at which their acid was sold in the U.S. by other defendants. Most defendants had "revenue sharing" contracts with Noranda and Falconbridge, whereby those other defendants paid to Noranda/Falconbridge, on a monthly or quarterly basis, a percentage of profits earned on the resale of the acid in the U.S. To compute this amount, the defendants reported to Noranda the average weighted price at which the acid had been sold to consumers. (Noranda called these "reconciliation" records). This is significant information for Dr. McClave to receive, particularly where other defendants (such as GAC and PVS) have been unwilling or unable to provide any sales data. Examples of reconciliation documents Noranda has in its possession are attached as Ex. 13.

Plaintiffs served a document production request for Noranda and Falconbridge to either provide a complete set of these hard-copy records or identify where in their massive production these documents were produced. Noranda and Falconbridge objected. This matter is currently

before Magistrate Judge Cole on plaintiffs' motion to compel.

At the same time, on April 6, 2005, plaintiffs also served a deposition notice upon Noranda/Falconbridge for testimony of a witness or witnesses to answer questions about its electronic databases. Ex. 14. (This deposition notice and pertinent correspondence with Noranda are set forth in chronological order in Ex. 14). Rather than produce witnesses, Noranda agreed it would work informally with plaintiffs to answer these questions. While Noranda sought to answer some of the questions on May 16, 2005, plaintiffs responded with a specific letter about the revenue reconciliation information on June 27, 2005.

Noranda did not provide any employee to talk with plaintiffs' data experts on any facet of its database until August 1, 2005 (and then, only after repeated follow-up by plaintiffs, including threats to file a motion to compel). That person admittedly had no information about the reconciliation pricing information. Noranda claimed it would make a knowledgeable person available on this subject. On August 15, 2005, Noranda's counsel stated that he was still trying to locate and provide a knowledgeable person and was still working on providing the customer lists that Noranda had agreed to provide at the August 1st conference call. To date, Noranda has not done so.

**E. Defendant DuPont**

Defendant DuPont has been generally helpful in attempting to provide transaction information, and to explain technical data questions to Dr. McClave. The process has taken a long time, (and is still ongoing), as the following illustrates. The experience with DuPont highlights why a defendant cannot simply "dump" transaction files upon plaintiff (as Koch did in late July, 2005) without explanation, and why the defendants' explanation of those files is critical. DuPont is included in this memorandum because it illustrates that even when a defendant seeks to cooperate, the process requires time consuming follow-up. DuPont has repeatedly revised the explanation of the codes used in its databases, conceding that information previously provided to plaintiffs was erroneous.

On January 18, 2005, plaintiffs wrote to DuPont with a number of questions about its electronic data bases. Ex. 15 (Correspondence with DuPont is set forth at Ex. 15 in chronological order). DuPont did not respond until February 11, 2005, and then did not address

many of the questions raised. Plaintiffs followed up with a series of conference calls with DuPont's counsel during March, but DuPont's counsel was not able to adequately answer plaintiffs' questions. The basic issue was that the DuPont databases contained over 200 separate "fields" or columns of data, many of which were not self-explanatory, and DuPont had not provided explanations of what the fields, columns, or codes meant.

On April 6, 2005, plaintiffs, because of this lack of explanation, served a deposition notice upon DuPont for production of a witness to explain these databases. The topics included "An explanation of how each field in those CD's was calculated and computed, and what each field means and a description of each code used." On April 13, 2005, DuPont's counsel stated it would be more productive and efficient to proceed informally, because no one witness could provide answers.

DuPont then provided some limited descriptions of the fields and codes. However, as these were insufficient, DuPont agreed to provide additional information. On April 25, 2005, DuPont sent a 62 page revised description with "maps containing an explanation of the data in each field and definitions of the codes found in the data." DuPont admitted these were still incomplete and that a supplement was necessary.

On May 5, 2005, DuPont sent what it described as "further revised maps to the electronic data" and a "revised code index."

On May 18, 2005, DuPont provided 11 more pages of revised codes.

On May 23, 2005, plaintiffs' expert requested additional clarifications, including confirmation of whether prices used were delivered prices.

On May 25, 2005, DuPont further revised its electronic maps and codes. On May 26, 2005, DuPont also revealed that certain customers in its database that had not purchased non-fuming acid (the product at issue).

Dr. McClave and his staff continued to work on the DuPont data bases. On June 24, 2005, Dr. McClave transmitted to plaintiffs' counsel, and plaintiffs' counsel forwarded to DuPont, eleven specific follow-up questions. Dr. McClave and his staff discovered further discrepancies in the databases, and generated an additional series of technical, detailed questions, which plaintiffs' counsel furnished to DuPont on July 8, 2005. On July 7, 2005, plaintiffs sent a