

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

)
In Re SULFURIC ACID ANTITRUST )     **MDL Docket No. 1536**
LITIGATION )     **Case No. 03 C 4576**
)
)     **Magistrate Judge Jeffrey Cole**
)
)

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

One of the issues in the Memorandum Opinion and Order of April 10, 2006 (the "Opinion") was whether the attorney-client privilege applied to a series of hypothetical questions posed in antitrust compliance manuals distributed by Noranda to employees whose duties involved marketing, sales, or production management responsibilities. (Opinion, at 37-43). *In re Sulfuric Acid Antitrust Litigation*, 2006 WL 1304947 (N.D.Ill. 2006). The Opinion noted that defendants had failed to provide a sufficient factual background of the formulation of the hypotheticals to allow me to determine whether they were protected by the attorney-client privilege. Consequently, "[t]he defendants [we]re given 14 days to file whatever additional *factual* support they desire to satisfy their burden of proof on the question of the applicability of the privilege to the 34 hypotheticals." (Opinion, at 43)(Emphasis in original). The defendants subsequently submitted an affidavit from Albert Gourley, a Canadian attorney involved in the preparation of the manuals.

While continuing to claim privilege, further reflection (and Mr. Gourley's candid affidavit) prompted the defendants to concede that 9 of the original 34 specifications were not well-founded and are outside the scope of the privilege. (*Noranda Defendants' Further Submissions*, at 2-3). Of course,

1

wisdom too often never comes, and so one ought not to reject it merely because it comes late. *Henslee v. Union Planters National Bank & Trust Co.*, 335 U.S. 595, 600 (1949)(Frankfurter, J., dissenting). But this seems not so much a question of belatedly obtained wisdom as a question of belatedly forced concessions. The Noranda defendants knew -- and most surely should have known if they did not -- that the nine hypotheticals that defendants no longer claim are privileged were either influenced by historic court cases or were entirely the product of Mr. Gourley's imagination.(*Gourley Aff.* ¶¶ 10-11). The Federal Rules of Civil Procedure require greater attentiveness to accuracy than was shown in the Noranda defendants' presentation on this issue. Any mistakes in reasoning are the judge's, *United States v. Franklin*, 174 Fed. 163, 164 (S.D.N.Y. 1909)(L.Hand, J.), but there ought not be needless roadblocks in the form of factually inaccurate presentations.

In assessing the defendants' factual showing, it must be recalled that "[t]he attorney-client privilege protects confidential communications made by a client to his lawyer '[w]here legal advice of any kind is sought ... from a professional legal advisor in his capacity as such.'" *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000). Communications made by a lawyer will be protected if they rest on confidential information obtained from the client or reveal the substance of a confidential communication. *See generally* the discussion in *In re Sulfuric Acid Antitrust Litigation*, 2006 WL 1304947 (N.D.Ill. 2006).

According to Mr. Gourley, Noranda's law department requested him to prepare a manual that Noranda employees could use by "apply[ing] the advice contained therein with respect to compliance with competition laws." (Gourley Aff. ¶ 5). Thus, Mr. Gourley "created" the hypothetical scenarios to demonstrate the interaction between competition laws and Noranda's various businesses. (Gourley Aff.

2

¶ 7). It was hoped that the manual would (1) assist Noranda personnel in better understanding competition law issues that could arise from Noranda's operations, (2) help them appreciate that Noranda could be subject to the competition laws of more than one jurisdiction, and (3) sensitize them to factual circumstances in which legal advice ought to be sought. (Gourley Aff. ¶ 6).

This factual elaboration confirms the non-privileged nature of the hypotheticals and related materials. It is now clear that the manuals were in fact instructional devices, not responses to requests for legal advice. They were designed to make clear to the sales and marketing personnel that Noranda operated under competition laws that could restrict their interactions with customers and others and to sensitize them to the need for care and circumspection in potentially compromising situations. Of course, these situations could not be spelled out with precision in advance; hence, the hypotheticals, which sought to synthesize their author's long experience in the industry and to identify by example potentially problematic areas. In so doing, it was hoped that the sales force would be alerted to the need to consult with Noranda's compliance officer so that, if necessary, the very legal advice that the hypotheticals themselves did not provide could be sought. Of course, requests for legal advice coming in the wake of involvement in potentially compromising situations would be protected, as would the advice given by counsel in response. But the hypotheticals, themselves, are not protected – at least not in this case. They do not reveal client confidences, only the creativity of their author and the capaciousness of his knowledge of the sulfuric acid market and the antitrust laws.

Mr. Gourley begins by explaining the genesis of hypotheticals 1, 2, 4, 9, 10, 11, 13, 16, 17, 19, 20, 21, 22, 26 and 29. These hypotheticals were:

generally based upon specific facts that Noranda presented to [him] on one or more

3

occasions in connection with requesting my legal advice regarding various complex transactions. To that extent, [he] created these hypotheticals with such factual situations in mind. However, [he] altered or adjusted the factual scenarios to create the specific hypotheticals that appear in the manual. These hypotheticals do not, therefore, represent historical factual situations in an accurate and complete manner.

(Gourley Aff. ¶ 8). Mr. Gourley and the defendants submit that, as such, this category of hypotheticals reveals client confidences. (Gourley Aff. ¶ 8; *Noranda Defendants' Further Submissions*, at 2). But if he admittedly altered the information he received from Noranda, then that information – the purported client confidence – is not revealed in the hypothetical. The attorney client privilege is not applicable to these fictionalized scenarios.

The next category includes hypotheticals 3, 6, 7, 12, 14, 15, 23, 25, 28, and 30. Mr. Gourley states that these "were based upon [his] knowledge and understanding of the general business and legal environment of Noranda and its affiliates." (Gourley Aff. ¶ 9). Mr. Gourley explained that he "gained this knowledge and understanding exclusively in the capacity of Noranda's lawyer in the course of responding to the company's ongoing requests for legal advice." (*Id.*). He created these hypotheticals to reflect matters he thought might be potentially important to Noranda. (*Id.*). Unlike the previous category, Mr. Gourley does not assert that these hypotheticals reveal client confidences. (*Id.*). The defendants, however, submit that they do, albeit indirectly. It is difficult to see how.

According to Mr. Gourley, these hypotheticals were the product of his accumulated knowledge and understanding of antitrust law in the sulfuric acid business. They were not the product of any requests for advice in specific circumstances, he merely states that he gained his knowledge as a result of responding to requests for advice over the years. He does not suggest that he in any way incorporated any actual – or even altered – client confidences into them. As such, these hypotheticals would be akin to Mr. Gourley

4

giving a talk on his experiences at a conference or perhaps writing an article on the subject of antitrust concerns in the sulfuric acid industry. Neither would be subject of a debate over the applicability of the attorney client privilege. These hypotheticals do not qualify as privileged.

Finally, Mr. Gourley states that the "Quick Reference Guidelines" on pages 27 and 28 of the manual summarize his "legal advice to recipients of the manual and incorporate[] instructions as to those factual circumstances in which further legal advice ought to be sought by those persons." (Gourley Aff. ¶ 12). Again, this is not a specific response to legal advice being sought, but a prompting to seek advice when certain situations arise. As with the previous category of hypotheticals, Mr. Gourley does not assert that the guidelines reveal client confidences. (Gourley Aff. ¶¶12-13). Also like that previous category, he indicates that he drafted the guidelines based on his knowledge and understanding of the general business and legal environment in which Noranda operates. (Gourley Aff. ¶ 12). As such, the guidelines are, like the previous category, not protected by the attorney client privilege.

Accordingly, the hypotheticals in the manuals are not protected by the attorney-client privilege.

**ENTERED:**

UNITED STATES MAGISTRATE JUDGE

Date:   5/26/06

5