# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE SULFURIC ACID ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO<br>All Related Actions | Master File No. 03-4576<br><br>MDL No. 1536<br><br>Judge David H. Coar<br><br>Magistrate Judge Jeffrey Cole |

## AFFIDAVIT OF DEAN H. LARSON

I, Dean H. Larson, certify and declare as follows:

1. I have personal knowledge of the matters set forth in this Affidavit.

2. My business address is 3149 Copley Road, Copley, Ohio 44321.

3. I am employed by PVS Chemical Solutions, Inc. ("PVS Solutions"), which is the successor by merger to PVS Chemicals, Inc., (Ohio) ("PVS (Ohio)") (PVS Solutions and PVS (Ohio) are referred to collectively as the "PVS" or "the Company"). I have been the Vice President—Sulfur Products of PVS Solutions since the merger of PVS (Ohio) into PVS Solutions on January 1, 2000. From November 1, 1988 through December 31, 1999, I was President of PVS (Ohio), and, before November 1, 1988, I was the Sales Manager of PVS (Ohio). In each of these positions for PVS Solutions and PVS (Ohio), my responsibilities include and have included, among others, the marketing and sales of sulfur-based products, including sulfuric acid.

4. The Company previously operated a sulfuric acid plant in Copley, Ohio (the "Copley plant") from which it manufactured acid for sale to customers.

5. The Company acquired the Copley plant on February 1, 1983. The Copley plant was built many years before then.

6. By the mid-1980s, the sulfuric-acid manufacturing process at the Copley plant was old, unprofitable and not competitive in the marketplace.

7. Because of the lack of profitability of the Copley plant's sulfuric-acid manufacturing process, PVS conducted a make-or-buy analysis to determine whether it would be more profitable for the Copley plant to sell sulfuric acid that the Copley plant purchased from third parties instead of continuing to sell acid that the Copley plant made itself. In that analysis, PVS determined that it would be more profitable for the Copley plant to sell sulfuric acid that it purchased rather than made.

8. By August 30, 1987, based upon PVS's make-or-buy analysis, PVS determined that it would shut down the Copley plant's sulfuric-acid manufacturing process and seek to purchase the sulfuric acid that it needed to service its customers.

9. When PVS made its decision to shut down the Copley plant's sulfuric-acid manufacturing process, PVS was aware that, due to changing environmental laws in North America, Noranda would be increasing the amounts of sulfuric acid that Noranda made available for sale.

10. When PVS was considering alternative sources for the sulfuric acid that PVS would purchase after shutting down its manufacturing process, PVS was aware that, given Noranda's current location, Noranda would be capable of offering its increased quantities of sulfuric acid within the Copley plant's area.

11. PVS therefore discussed with Noranda the possibility of having Noranda supply PVS's sulfuric-acid requirements at Copley, Ohio. Other potential sulfuric-acid suppliers that PVS considered at the time included Asarco and Kennecott.

12. Before entering into any agreement with Noranda concerning the purchase of sulfuric acid, PVS had already made the decision to shut down the sulfuric-acid manufacturing process at the Copley plant.

2

13. PVS's decision to shut down its sulfuric-acid manufacturing process at the Copley plant was made by PVS alone.

14. The attached Exhibit A is a true and correct copy of PVS's August 30, 1987 Copley Sulfuric Shutdown Action Plan.

15. The attached Exhibit B is a true and correct copy of a March 1, 1988 memo prepared by Donald Sosnoski, who was then the Chief Financial Officer of PVS (Ohio)'s parent corporation, and sent to James B. Nicholson, who was then the President of PVS (Ohio)'s parent.

16. The attached Exhibit C is a true and correct copy of a March 7, 1988 memo prepared by Donald Sosnoski and sent to James B. Nicholson, Frank Bierman, Robert Olson and me.

17. I am familiar with the documents attached as Exhibits A, B, and C.

18. The attached Exhibits A, B, and C were prepared by the personnel of the Company at or around the time of the matters described in those documents; or were prepared by, or from information transmitted by, a person with knowledge of those matters.

19. The attached Exhibits A, B, and C are the sorts of documents regularly made and kept by the Company as part of its normal course of business.

20. The attached Exhibits A, B, and C were maintained by the personnel of the Company in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
DEAN H. LARSON

Executed this 27th day of July, 2006, in Detroit, Michigan.

3