**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE SULFURIC ACID** | ) | **MDL Docket No. 1536** |
| **ANTITRUST LITIGATION** | ) | **Case No. 03 C 4576** |
| | ) | |
| | | **Honorable Judge James F. Holderman** |
| **This Document Relates To:** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **ALL RELATED ACTIONS** | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH THE PVS
DEFENDANTS  AND FOR AUTHORIZATION TO DISSEMINATE NOTICE**

## I. INTRODUCTION

Plaintiffs, on behalf of themselves and the certified class of direct purchasers of Sulfuric Acid (the "Class"), have entered into a Settlement Agreement with the PVS Defendants.  "PVS Defendants" or "PVS" are four related privately-held corporations under common ownership and control: Pressure Vessel Services, Inc., PVS Chemicals, Inc. (Ohio), PVS Nolwood, Inc. and PVS Chemical Solutions.   Under the Settlement Agreement, a copy of which is attached hereto as Ex. 1, the PVS Defendants have agreed to make a cash payment of $750,000 to the Class.

Plaintiffs now move the Court to enter a Preliminary Approval Order attached to the motion: (1) finding that the proposed settlement with the PVS Defendants is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the Class; (2) establishing a date for a hearing on final approval of the proposed settlement; (3) approving the form of notice of the proposed settlement; (4) approving the notice plan and directing that notice be disseminated; (5) establishing a deadline for filing papers in support of final approval of the

proposed settlement; (6) establishing a deadline for filing objections to the proposed settlement by Class Members.

## II.  PRELIMINARY APPROVAL SHOULD BE GRANTED

Plaintiffs allege that Defendants who manufactured and sold sulfuric acid to customers in the merchant/industrial market in the United States conspired to stabilize and inflate the prices customers paid for that acid.  The Consolidated Amended Complaint was filed on September 5, 2003 (Dkt. No. 8).  The Second and Third Consolidated Amended Complaints (Dkt. Nos. 60, 322) named additional parties.  Plaintiffs contend that, as a result of this conspiracy, they and the other members of the Class were injured when they paid artificially inflated prices for Sulfuric Acid.

The Court certified a class in March 2007.  *In re Sulfuric Acid Antitrust Litigation,* No. 03-CV-4576, 2007 WL 898600 (N.D. Ill. Mar. 21, 2007).   This Court granted preliminary and final approval to class settlements with DuPont (Dkt. No. 397 on July 26, 2006, and Dkt. No. 450 on December 20, 2006), and with Defendants Marsulex/Chemtrade (Dkt. No. 566 on February 19, 2008, and Dkt. No. 589 on May 15, 2008).

On December 22, 2011, the Court entered final judgment in favor of all Defendants, including the PVS Defendants (Dkt. No. 795).  Plaintiffs filed a timely notice of appeal (Seventh Circuit Docket 12-1109), and Defendants have filed a notice of conditional cross-appeal, challenging the class certification (Seventh Circuit Docket 12-1224).

These appeals are pending.  In that posture, the Senior Conference Attorney for the Settlement Conference Office of the Seventh Circuit Court of Appeals, Joel N. Shapiro, conducted settlement discussions with the PVS Defendants and Class Plaintiffs.  These discussions ultimately resulted in the Settlement Agreement .  Class Counsel and PVS' counsel signed the Class

Settlement Agreement on August 24, 2012. PVS has agreed to pay $750,000 in final settlement of this litigation as to itself.

Plaintiffs request that this Court grant preliminary approval for this settlement and authorized dissemination of notice to the Class. The settlement warrants preliminary approval for four reasons. First, the PVS Defendants are currently the holders of a final judgment in their favor. PVS has agreed to pay the Class $750,000 notwithstanding that final judgment. The Settlement Agreement is not contingent on the outcome of the appeal---in other words, PVS will pay the settlement amount even if the Seventh Circuit ultimately affirms the final judgment. The settlement amount is sufficiently fair, reasonable and adequate to warrant preliminary approval given the procedural posture of the case.

Second, even if Plaintiffs prevail in their appeal and on Defendants' cross-appeal and the case is remanded for trial, Plaintiffs and Class Members would face issues with respect to liability and damages as to PVS. While Plaintiffs believe the liability evidence against PVS is substantial, PVS argues the evidence is not and that it made its decisions unilaterally, not collusively. As to impact and damages, PVS has joined in the remaining Defendants' *Daubert* motions to exclude Plaintiffs' expert witnesses. These motions were fully briefed and orally argued before Magistrate Judge Cole at the time of entry of final judgment. On remand, PVS would renew those challenges. In short, even if Plaintiffs are successful on the current appeal, PVS contends it would mount strong defenses to both liability and damages.

Third, because the antitrust laws provide for joint and several liability, *Papers Sys. Inc. v. Nippon Paper Indus. Co., Ltd.*, 281 F.3d 629, 633 (7th Cir. 2002), the settlement with PVS does not extinguish the liability of any other Defendant, all of whom remain liable for the full amount

3

of damages caused by the conspiracy, including PVS' sales. Thus, if the Seventh Circuit reverses the judgment on appeal, this release will not release any Defendant except PVS, nor will it release the remaining Defendants from their responsibility for PVS' sales.

Fourth, the Settlement Agreement provides that PVS will provide cooperation to Plaintiffs in connection with any trial of this matter against the remaining Defendants.

The Settlement Agreement with PVS is modeled upon the agreement with Defendants Marsulex/Chemtrade, which the Court approved. (Dkt. No. 578, preliminary approval February 28, 2008; Dkt. No. 529, final approval May 15, 2008). Similarly, the proposed notice to be mailed to each Class Member by First-Class Mail is modeled upon notices which the Court approved in connection with the Marsulex/Chemtrade settlement.

### III. SUMMARY OF THE SETTLEMENT AGREEMENT

#### A. The Settlement Funds

The Settlement Agreement provides that the PVS Defendants will pay $750,000 into the Settlement Fund for the benefit of the Class within five (5) days of the Execution Date of the Settlement Agreement. (Settlement Agreement at ¶ 20.) This money will be placed in escrow and all interest earned on those funds shall become and remain a part of the Settlement Fund. (*Id.* at ¶¶ 20, 24.) PVS also agreed to return the $1,222.65 it was paid by Plaintiffs for costs following the entry of final judgment. (*Id.* at ¶ 21.)

#### B. Costs of Notice and Administration

The Settlement Agreement provides that Plaintiffs' Co-Lead Counsel are authorized to make disbursements from the Settlement Fund (following preliminary approval) of up to $50,000 for reasonable expenses associated with providing notice of the settlement to the proposed Class and expenses associated with administering the Settlement Fund. (*Id.* at ¶ 21.)

C.    **Cooperation**

In addition to paying the settlement amount, the PVS Defendants will cooperate with Class Counsel in connection with the prosecution of Plaintiffs' claims against the remaining Defendants. ( *Id.* ¶¶ 29-30.)

D.    **Release and Discharge**

The Settlement Agreement provides for the Release and Discharge of the PVS Defendants. (*Id.* at ¶ 17.)  Under the antitrust laws, this release has no impact upon remaining Defendants, who remain jointly and severally liable in the event the Seventh Circuit reverses the final judgment. (*Id.* at ¶ 32.)

## IV. PROPOSED TIMETABLE

The proposed Preliminary Approval Order sets forth an orderly procedure for disseminating notice to the Class and a timetable for final approval.  Plaintiffs' Co-Lead Counsel propose the following schedule:

> **Within seven (7) days** of entry of the Order Preliminarily Approving the Settlement (hereafter "Order") – individual notice mailed to all Class Members by First-Class Mail;

> **Within forty-five (45) days** of entry of the Order – deadline for Class Members' objections to the settlement;

> _____, **2012** – date to be set by Court for hearing on final approval of the settlement.

The briefs supporting final approval of the settlement will be submitted ten (10) days before the date for final hearing.

5

## V. THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF NOTICE TO THE CLASS

### A.    Governing Standards

The governing legal standards have been set forth in Plaintiffs' memorandum for preliminary approval of the DuPont and Marsulex/Chemtrade settlements.  There is a strong public interest in settling litigation, and this is particularly true in class actions.  *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985) (noting that there is a general policy favoring voluntary settlements of class action disputes ). Class action settlements minimize the litigation expenses of both parties and reduce the strain such litigation imposes upon already scarce judicial resources.  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

As recent examples of preliminary approvals in class actions, *see, e.g., In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.,* 280 F.R.D. 364, 371 (N.D. Ill. 2011) (Holderman, CJ) ("On August 16, 2011, the Court granted preliminary approval, finding that the settlement 'is fair and has been negotiated at arm's-length, and that its adequacy is such that the settlement falls within the range of possible final approval.'"); *In Re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at **5-7 (N.D. Ill Jan. 31, 2012); *Schulte v. Fifth Third Bank*, No. 99 CV 6655, 2010 WL 8816289 (N.D .Ill. Sept. 10, 2010).

The *Manual For Complex Litigation (Fourth)* § 21.632 (2004) provides a framework for the Court's preliminary evaluation of a proposed class action settlement:

> The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the [formal Rule 23(e)] fairness hearing.

6

*See also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997). A court's authorization to disseminate notice constitutes its recognition that the settlement is within the range of possible approval. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981). Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-E.R.R*, 627 F.2d 631, 634 (2d Cir. 1980).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a basis for concluding that the proposed settlement will meet the standards applied for final approval, i.e., that the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *Isby*, 75 F.3d at 1198-99; *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986-88 (7th Cir. 2002).[1]

### B. The Settlement is Fair and Resulted from Arm's-Length Negotiations

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983). There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *See* 4 Conte, *supra*, § 11.41; *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995) ("A number of courts have held that it may be presumed that the agreement is

---

[1] The factors that a court considers on a motion for final approval of a class settlement as "fair, reasonable and adequate" include the following: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of class members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations . . . ."). Settlements proposed by experienced counsel and which result from arm's-length negotiations are entitled to deference from the court. *See, e.g,. Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *10 n.2; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*citing Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects the understanding of the courts that vigorous negotiations between seasoned counsel protects against collusion and advances the fairness concerns of Rule 23(e). Here, that presumption is substantially enhanced because the chief settlement mediator of the Seventh Circuit conducted substantial settlement discussions between the PVS Defendants and Class Counsel, which led to this settlement.

The settlement with the PVS Defendants also specifically preserves the right of Plaintiffs to proceed against the remaining Defendants for the entire amount of the Class' damages on the basis of joint and several liability. (Settlement Agreement at ¶ 32.) ("The sales of Sulfuric Acid by the PVS Defendants in the United States shall remain in the case against the Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Defendants in the Action or other persons or entities other than the Releasees."). *See In re Corrugated Container Antitrust Litig.*, No. M.D.L. 310, 1981 U.S. Dist. LEXIS 9687, at * 49 (S.D. Tex. June 4, 1981), *aff'd*, 659 F. 2d 1322 (5th Cir. 1981) (partial settlements that specifically and explicitly preserved Plaintiffs' right to litigate against all remaining Defendants for the entire amount of Plaintiffs' damages, on the basis of joint and several liability, were considered by the

court to be a "valuable provision supporting the approval of the settlements."). This provision is particularly important here because among the remaining Defendants are entities with significant financial strength who should be able to satisfy a large judgment, should the case be remanded for trial and should Plaintiffs prevail at such trial.

## VI. <u>NOTICE TO THE CLASS</u>

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." The Court has discretion as to the form and content of the notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172-77 (1974). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The content and proposed method of dissemination of the proposed Notice submitted here fulfills the requirements of Federal Rule of Civil Procedure 23(e)(1) and due process. *See generally Mangone v. First USA* Bank, 206 F.R.D. 222, 233-34 (S.D. Ill. 2001); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143, at *6, (N.D. Ill. June 12, 2000).

Plaintiffs propose providing individual, mailed notice to Class Members. This Court's prior orders have directed Defendants to provide to Plaintiffs' counsel the names and addresses of all Class Members, and Defendants have done so. Individual notice to these Class Members will be mailed, First Class and postage prepaid, to all entities identified by Defendants as direct purchasers of Sulfuric Acid in the United States between January 1, 1988, and January 16, 2003.

The Notice apprises Class Members of the material settlement terms, the right to object to the settlement, and the procedure to do so. The Notice also informs Class Members of the date and place of the Final Approval Hearing. It also advises how and where to obtain the full

9

settlement documents and relevant litigation pleadings. Class members will also be informed that a complete copy of the Settlement Agreement will be available on the website of the Claims Administrator, and the web address will be provided in the mailed Notice.

## VII. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that Plaintiffs' Motion for Preliminary Approval of a Proposed Settlement with the PVS Defendants and for Authorization to Disseminate Notice be granted.

Dated: September 7, 2012                                    Respectfully submitted,

                                                                       _____

Steven A. Asher, Esq.                                       Mary Jane Fait, Esq.
Mindee J. Reuben, Esq.                                      Theodore B. Bell, Esq.
WEINSTEIN KITCHENOFF                                        WOLF HALDENSTEIN ADLER
  & ASHER LLC                                               FREEMAN & HERZ, LLC
1845 Walnut Street, Suite 1100                              55 West Monroe, Suite 1111
Philadelphia, PA 19103                                      Chicago, Illinois 60603
Telephone: (215) 545-7200                                   Telephone: (312) 984-0000
Facsimile: (215) 545-6535                                   Facsimile: (312) 984-0001

Solomon B. Cera, Esq.                                       Joseph C. Kohn, Esq.
C. Andrew Dirksen, Esq.                                     Robert J. LaRocca, Esq.
GOLD BENNETT CERA & SIDENER LLP                             William E. Hoese, Esq.
595 Market Street, Suite 2300                               KOHN SWIFT & GRAF, P.C.
San Francisco, CA 94105                                     One South Broad Street, Suite 2100
Telephone: (415) 777-2230                                   Philadelphia, PA 19107
Facsimile: (415) 777-5189                                   Telephone: (215) 238-1700
                                                            Facsimile: (215) 238-1968

Plaintiffs' Co-Lead Counsel